Argued and submitted March 2, decision of Court of Appeals reversed; judgment of
circuit court reversed, and case remanded to circuit court for further proceedings
April 27, 2006

In the Matter of
Jennifer Jeanette Rardin,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*

*v.*

Chris Allen RARDIN,
*Petitioner on Review.*

(CC 2590J; CA A125045; SC S53061)

134 P3d 940

James A. Palmer, Eugene, argued the cause and filed the petition for petitioner on review.

Laura S. Anderson, Salem, argued the cause for respondent on review.

Karen S. Torry, Forest Grove, argued the cause for the minor child.

BALMER, J.

**BALMER, J.**

The trial court in this case terminated father's parental rights respecting child on the grounds that father was unfit, ORS 419B.504, and that father had neglected child, ORS 419B.506.[1] The trial court reached those conclusions based on father's alleged failure to provide and implement a plan for integrating child into his home. The Court of Appeals initially dismissed father's appeal in an unpublished order on the grounds that it was untimely and that it failed to raise a colorable claim of error. This court reversed that decision and remanded the case to the Court of Appeals with instructions to address father's appeal on its merits. *State ex rel Dept. of Human Services v. Rardin*, 338 Or 399, 110 P3d 580 (2005) (*Rardin I*). On remand, the Court of Appeals affirmed the trial court judgment, concluding that father was unfit because of his previous absence from child's life. *State ex rel Dept. of Human Services v. Rardin*, 202 Or App 603, 123 P3d 362 (2005) (*Rardin II*). For the reasons that follow, we reverse the decision of the Court of Appeals and the judgment of the trial court.

■      This court may review a termination of parental rights under a *de novo* standard, or it may choose to limit review to questions of law. ORS 19.415(4); *see State ex rel SOSCF v. Stillman*, 333 Or 135, 138, 36 P3d 490 (2001) (so stating). Here, we limit our review to questions of law and rely on the factual findings of the trial court and the Court of Appeals (which are consistent with each other) as well as on facts in the record that are undisputed and that are not inconsistent with the lower courts' factual findings.

BACKGROUND AND PROCEEDINGS BELOW

In January 1995, while parents were living together, mother gave birth to the child that is the focus of this proceeding. Father signed the birth certificate as child's father. Mother and father separated when child was about 18 months old, and child remained with mother. Father moved

---

[1] The trial court also terminated mother's parental rights. Mother did not appeal, and the judgment terminating mother's rights became final.

to Washington. At some point, mother told father that child was not his.[2] Mother was abusing drugs during this period of time. Because of mother's drug abuse, incarceration, and other problems, the Department of Human Services (DHS) temporarily removed child from mother's custody several times between 1997 and 2001.

DHS located father in 1999 to discuss child's future and the development of a relationship between father and child. Father, however, did not want to exercise his parental rights until he could confirm his paternity through a DNA test. Father could not afford the $1,250 to $2,500 that he was told a DNA test would cost, and DHS would not pay for the test. Father also contacted child services officials in Washington, but they, too, would not help to pay for the test. From 1999 until 2001, father and DHS continued to correspond from time to time.

Father was particularly interested in confirming his paternity through a DNA test because he had substantial doubts about his paternity. In addition to mother's statement to him that he was not child's father, several of father's male acquaintances had told father that they had had sex with mother when father and mother were living together. Moreover, state officials had contacted father earlier in connection with another woman's paternity allegation against him, and a DNA test had disproved that claim.

In December 2001, DHS informed father that it had removed child from mother's custody again. Father began participating in court proceedings involving child and obtained court-appointed counsel, although he continued to insist on confirming his paternity before assuming parental responsibilities. On April 15, 2002, DHS wrote to father, stating that it would provide him services to help him develop a relationship with child and to assist with possible placement

---

[2] The trial court found that mother made that statement to father around July 1995, when child would have been six months old. The Court of Appeals, however, found that mother had made that statement sometime after father and mother had separated, *Rardin II*, 202 Or App at 605, which father testified was in September or October 1996. The Court of Appeals' finding is consistent with father's trial testimony. The discrepancy between the trial court and Court of Appeals findings, however, is not material to the legal issues here.

of child in his home. The letter requested that father contact DHS by May 10, 2002. However, and despite the statements in its April 15, 2002, letter to father, DHS wrote to the court on April 29, 2002, indicating that it intended to seek to terminate the parental rights of both father and mother.[3] On May 13, 2002, DHS wrote to father, stating that it had decided to seek to terminate his parental rights. On May 14, 2002,[4] father had a DNA test taken at a hospital lab in Dayton, Washington, and he informed DHS of that fact in a letter dated that same day.[5] In that letter, father stated that, if the test was positive, he wanted to develop a relationship with child.

Father's May 2002 DNA test was positive, and father's attorney so informed DHS that month. Nevertheless, as noted, DHS already had determined in April, before it had heard from father, that it would seek to terminate father's parental rights.

DHS refused to permit father to have contact with child but encouraged him to send presents, cards, and letters to child through DHS. Father did so. Later, DHS blocked the cards and letters that father sent to child, although it eventually forwarded them to her.

In October 2002, DHS filed a petition for termination of father's parental rights. DHS alleged that father was unfit under ORS 419B.504 because he had failed to present a viable plan for the return of child to his care and custody and because he had abandoned child. The petition also sought termination of father's parental rights on the grounds of neglect, ORS 419B.506, and abandonment, ORS 419B.508.

---

[3] The trial court stated that DHS decided to seek termination of father's parental rights in May 2002. It is indisputable, however, that the April 29, 2002, letter from DHS to the court states that DHS recommends that it "be relieved of efforts working toward re-unification [of child] with [father] and [be allowed to] implement [a] plan of adoption[.]"

[4] The trial court found that the DNA test had occurred on May 14, but father's letter stated that it had occurred on May 13. That difference is irrelevant to our analysis.

[5] In *Rardin I*, this court mistakenly stated that father had not obtained the DNA test until August 2002. *Rardin I*, 338 Or at 402.

The trial court held a hearing and issued an opinion. The trial court found that father could provide a stable environment for child's upbringing and that he had a plan for child's schooling. It found no problems with father's physical or mental health, his living arrangements, or his parenting abilities. The trial court noted that DHS's "only concern about [father] is his lack of a relationship with [child]." That concern also became the basis for the trial court's decision. The trial court credited a psychologist's observation that too much time had passed for father to renew a relationship with child. The trial court stated, "[T]he evidence is uncontradicted that a biological father should be integrated into a child's life not later than the child's third birthday." Based on that testimony, the trial court concluded that father's "contact [with child] came so late that [child] is not psychologically able to accept him as a parent[.]" That lack of contact with child—much of which, according to the trial court, was attributable to choices that father had made—meant that father had no relationship with child and that therefore, in the court's view, father was unable to present a viable plan for child's return to him.

Based on that determination, the trial court reached the following conclusion regarding the state's argument that father was unfit under ORS 419B.504:

> "[F]ather is unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the father's home is improbable within a reasonable time due to conduct or conditions not likely to change, including the following: failure to present a viable plan for the return of the child to the parent's care and custody."

Similarly, the trial court agreed with the state that father's parental rights should be terminated based on his neglect of child under ORS 419B.506:[6]

> "[F]ather has failed and neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for six months prior to the filing of the petition as shown by his: failure to implement a plan

---

[6] The trial court rejected the state's third theory, holding that the state had not proved that father had "abandoned" child within the meaning of ORS 419B.508.

designed to lead to the integration of the child into the father's home."

As noted, father filed an untimely appeal, but he sought to show that he had a colorable claim of error under ORS 419A.200(5)(a) that would excuse the late filing. In an unpublished order, the Court of Appeals rejected father's argument and dismissed the appeal. In *Rardin I*, this court reversed the dismissal of father's appeal and remanded the case to the Court of Appeals.

On remand, the Court of Appeals, reviewing the evidence in the record *de novo*, affirmed the trial court's judgment terminating father's parental rights under ORS 419B.504. The Court of Appeals determined that father's "voluntary" absence from child's life between 1996 and 2002 had had a seriously detrimental effect on child; that father's absence had prevented the formation of any relationship with child; and that "father's conduct [had] allowed [child] to languish in an unsafe and unstable environment with mother for years." *Rardin II*, 202 Or App at 609. Accordingly, the Court of Appeals concluded that father was "unfit" and that his conduct was seriously detrimental to child. *Id.* at 609-10. The Court of Appeals also found that "integration of [child] into father's home within a reasonable time would not be feasible." *Id.* at 611. Finally, the Court of Appeals determined that it was in the best interests of child that father's parental rights be terminated. *Id.* at 612.[7] Father sought review, which we allowed.

TERMINATION FOR UNFITNESS UNDER ORS 419B.504

Although the trial court and the Court of Appeals both concluded that father's parental rights should be terminated, each court applied the statutes somewhat differently. Considering both the trial court decision and the decision on

---

[7] Because the Court of Appeals affirmed the termination of father's parental rights on unfitness grounds, it did not address whether the trial court was correct in terminating those rights because of neglect. *Rardin II*, 202 Or App at 605. As to the state's abandonment claim, which the trial court had rejected, the Court of Appeals stated that the state had not cross-assigned error from that holding and concluded that it was not an issue in the case. *Id.* at 607 n 3. We discuss that issue below. 340 Or at 450 n 12.

appeal will illuminate our discussion of the statutes regarding termination of parental rights. We now turn to that task.

In justifying termination in this case, the courts below relied first on ORS 419B.504, which provides:

"The rights of the parent * * * may be terminated * * * if the court finds that the parent [is] unfit by reason of conduct or condition seriously detrimental to the child * * * and integration of the child * * * into the home of the parent * * * is improbable within a reasonable time due to conduct or conditions not likely to change."

ORS 419B.504 imposes two separate requirements before a trial court may terminate a parent's rights: parental unfitness and the inability to reintegrate within a reasonable time. In *Stillman*, this court described those requirements as follows:

"First, the court must address a parent's fitness: The court must find that the parent is 'unfit by reason of conduct or condition seriously detrimental to the child.' That, in turn, requires a two-part inquiry: The court must find that: (1) the parent has engaged in some conduct or is characterized by some condition; and (2) the conduct or condition is 'seriously detrimental' to the child. Second—and only if the parent has met the foregoing criteria—the court also must find that the 'integration of the child into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change.' That second part of the test for termination requires the court to evaluate the relative probability that, given particular parental conduct or conditions, the child will become integrated into the parental home 'within a reasonable time.' "

*Stillman*, 333 Or at 145-46. ORS 419B.504 also lists several nonexclusive considerations that a court may use in determining the "conduct" or "conditions" that constitute the basis for finding unfitness.[8]

---

[8] The statutory considerations under ORS 419B.504 are:

"(1) Emotional illness, mental illness or mental deficiency of the parent of such nature and duration as to render the parent incapable of providing proper care for the child or ward for extended periods of time.

"(2) Conduct toward any child of an abusive, cruel or sexual nature.

"(3) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.

Here, the trial court concluded that the conduct or condition demonstrating father's unfitness was that father "had fail[ed] to present a viable plan for the return of the child to [his] care and custody." In the trial court's view, that conclusion encompassed both of the requirements set out in ORS 419B.504. In other words, the trial court concluded that, because father had failed to present a viable plan, the state had proved by clear and convincing evidence *both* statutory requirements: (1) that the parent is unfit because the parent has engaged in conduct or is characterized by a condition that is "seriously detrimental" to the child, *and* (2) that the "integration of the child * * * into the home of the parent * * * is improbable within a reasonable time due to conduct or conditions not likely to change." In the court's view, "[a]s a result of the delayed contact between [father] and [child], it is not emotionally viable for [child] to be incorporated into [father's] home within a reasonable time."

We are sympathetic to the trial court's dilemma in ruling on a petition to terminate parental rights in these circumstances. Father here did not exhibit any of the usual indicia of unfitness that are listed in ORS 419B.504; yet father also—in part by his own choice—had had no relationship with child for seven years at the time of the hearing and almost eight years at the time of the trial court decision.[9]

■ However, the court may terminate parental rights only when the statutory requirements have been met. Here, the basis on which the trial court grounded its termination of father's parental rights is inconsistent with ORS 419B.504,

---

"(4) Physical neglect of the child or ward.

"(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make it possible for the child or ward to safely return home within a reasonable time or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"(6) Criminal conduct that impairs the parent's ability to provide adequate care for the child or ward."

[9] As father points out, however, DHS prohibited father from any direct contact with child after May 2002.

which requires that the inquiry first must focus on the parent's "unfitness," rather than the lack of a "viable plan." *See Stillman*, 333 Or at 145 ("First, the court must address a parent's fitness[.]"). As this court made clear in *Stillman*, termination of parental rights under ORS 419B.504 requires that the state demonstrate both that the parent is unfit *and* that the child cannot be integrated into the parent's home within a reasonable time. If the parent is not "unfit," then the parent's rights may not be terminated. The trial court, however, appears to have used the asserted difficulty of integration into father's home—the second part of the statutory test—to conclude that father was unfit. To the extent that the trial court conflated those two distinct requirements, it committed legal error. Alternatively, to the extent that the trial court maintained the distinction between those legal requirements and instead simply found that the testimony regarding parent-child bonding and father's lack of contact with child made father "unfit," the trial court erred in concluding that those facts can constitute "unfitness," as we describe in greater detail below.

■        On *de novo* review, the Court of Appeals similarly concluded that father was unfit because he had been absent from child's life for six years. Father's absence, in that court's view, was seriously detrimental to child and rendered impossible the integration of child into father's home within a reasonable period of time. *Rardin II*, 202 Or App at 609-11. The Court of Appeals, however, like the trial court, erred when it concluded that father was "unfit" for purposes of ORS 419B.504 solely because he declined to take responsibility for a child that he had reason to believe (and, the trial court found, did believe) was not his. That behavior is not of the same type as the directly harmful or threatening behaviors described in the nonexclusive list of considerations that the statute provides to determine whether specific "conduct" or "conditions" render a parent unfit. The statutory list includes conduct such as abuse of any child, ORS 419B.504(2), and "[c]riminal conduct that impairs the parent's ability to provide adequate care for the child." ORS 419B.504(6). It identifies conditions such as drug or alcohol addiction that substantially impairs parental ability, ORS 419B.504(3), and

mental illness that renders the parent unable to care for the child, ORS 419B.504(1). Neither the trial court nor the Court of Appeals found that father had engaged in any such conduct or suffered from any such condition.

Rather, both courts focused on father's lack of a relationship with child as the basis for determining that father was unfit. The Court of Appeals, like the trial court, emphasized testimony by a psychologist that child was confused because father had been absent from her life for an extended period and later had attempted to reestablish contact with her. *Rardin II*, 202 Or App at 609. The Court of Appeals also found it significant that father had allowed child to remain in an "unsafe and unstable environment with mother for years[,] * * * despite being her father[,]" although it noted that father may not have been aware of child's situation until 1999. *Id.* For those reasons, the Court of Appeals concluded that "although father may finally be ready, willing, and able to be a father to [child], father's current desire does not overcome his past indifference to [child]'s welfare * * *." *Id.* at 610. On that basis, the Court of Appeals concluded that father was unfit for purposes of ORS 419B.504.

We do not agree that the facts described above prove by clear and convincing evidence that father was unfit. First, although father became aware at some point in 1999 that child had temporarily been removed from mother's custody, father's awareness of the details of child's circumstances is unclear. It is undisputed that father was living in another state at the time, and that, during some of the time when child was not in mother's custody, child was with maternal grandparents or stepfather. Child undoubtedly would have been better off if father had been involved in her life at that period, but, given father's uncertain knowledge of the circumstances of child's living situation, that evidence does not show that *his* conduct, as opposed to mother's, was "seriously detrimental" to child. Second, as described above, during that time father reasonably believed that he might not be child's biological father and wanted to confirm his paternity before exercising his parental rights. Third, for the two years between father's DNA test and the entry of the judgment terminating his rights, father was unable to establish any relationship with child because DHS would not permit it.

■　　Encompassing the considerations just discussed, and of overriding significance in its own right, is the wording of ORS 419B.504, which requires the court to find "that the parent or parents *are* unfit" before it may terminate parental rights under that statute. (Emphasis added.) This court has held that the legislature's use of the present tense in that part of ORS 419B.504 compels a court to consider whether a parent is "unfit *at the time of the termination hearing*," not whether a parent was unfit at some time in the past. *Stillman*, 333 Or at 148 (emphasis in original). In *Stillman*, for example, this court concluded that father's past drug problems did not constitute "conduct" or a "condition" that rendered him unfit at the time of the termination hearing, given father's serious efforts to address his drug problem. *Id.* at 148-49. Similarly, in *State ex rel Dept. of Human Services v. Smith*, 338 Or 58, 83, 106 P3d 627 (2005), this court held that a family's prior relationship with three sex offenders did not constitute present unfitness, since two of the offenders had died and the third had long since moved out of the home.

■　　It is clear from the wording of ORS 419B.504 and from *Stillman* and *Smith* that the legislature assumes that parents *can* change their conduct and that, if the change is both genuine and lasting, the state may not terminate their parental rights for unfitness. At least, that appears to us to be the necessary linguistic consequence of a statute that permits the termination of parental rights only on grounds of present unfitness. Here, the record affirmatively demonstrates that father's conduct, even if it had been detrimental to child earlier in child's life, *had* changed. Father wanted to become part of child's life, once he knew that he was the biological father. In addition, father might have become part of child's life at a time that was more beneficial to the child had DHS not barred him from directly contacting child and decided to seek to terminate his parental rights the very same month that father confirmed his paternity.

■　　The state responds that, even if father is not presently "unfit" in the abstract and is not unfit to be the parent of a different child, his lack of a relationship with child for six years means that father *never* can be a fit parent for *this* child. The state relies, as did the trial court and the Court of Appeals, on the testimony of a psychologist who told the trial

court that, to " 'reintegrat[e] father into [child's] life, the stable period * * * would have been before the age of three for her to be able to have a security base and trust with him.' " *Rardin II*, 202 Or App at 610 (quoting psychologist's testimony). The psychologist seemed to opine—and the courts below seemed to have accepted—that, even though father helped to raise child for approximately 18 months, because he had been absent from her life for the next 18 months (at which point she would have been three years old) father never would have been able successfully to reintegrate into her life. Putting to one side the validity of the psychologist's opinion, as to which we have serious doubt, that opinion is flatly inconsistent with Oregon's statutory scheme for terminating parental rights on the basis of unfitness. As noted, ORS 419B.504 assumes that parents *can* change and allows a court to terminate parental rights for unfitness, not when the parent's conduct or condition may have made the parent "unfit" in the past, but only when the parent *presently* is unfit. A parent may be absent from the life of a child for part or all of the child's first three years for reasons as various as military service, overseas employment, or, as here, separation from the parent with whom the child remains. ORS 419B.504 does not permit a court to conclude that a parent is presently "unfit" by reason of conduct or condition seriously detrimental to the child simply because the parent was not integrated into the life of the child by the time that the child was three years old.

The state points out that, in some circumstances, a parent's past conduct may be so egregious that parental rights should be terminated, even if the court determines that the conduct will not recur. We agree, and we observe that a specific statute provides for termination in just such circumstances. ORS 419B.502 permits the termination of parental rights based on a single (or recurrent) incident of "extreme conduct towards any child," and it provides a non-exclusive list of factors for the court to consider in determining extreme conduct, including sex abuse of any child, abuse or neglect of any child resulting in death or serious physical injury, and similar egregious conduct. *See* ORS 419B.502(1)-(7) (listing considerations for determination of "extreme conduct"). The legislature thus provided a procedure for terminating parental rights based upon past conduct, even when

the parent might be a "fit" parent at the time of the termination proceeding. However, under ORS 419B.504, the statute at issue in this case, the parent's *present* fitness is controlling. For the reasons discussed above, we conclude that the state failed to demonstrate the unfitness required to terminate father's parental rights under ORS 419B.504.[10]

## OTHER GROUNDS FOR TERMINATION

■ We turn now to the state's alternative grounds for seeking termination of father's parental rights. The trial court concluded that the state also had proved "neglect" under ORS 419B.506, which authorizes termination when a parent has "neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child * * * for six months prior to the filing of a petition."[11] However, the only basis that the trial court judgment identified for its finding of neglect was essentially the same as for its finding of unfitness: father's "failure to implement a plan designed to lead to the integration of the child into the father's home." We fail to see how the trial court's factual finding can meet the statutory standard for neglect just quoted. Moreover, until May 2002, father had reason to believe that he was not the biological father of child. When he finally received an ultimatum from DHS, he obtained a DNA test within a month and sought to reestablish a relationship with child. In the same month, the state decided to prevent father from exercising his parental rights, and then in October 2002 it filed the petition to terminate those rights. Thus, to the extent that father failed to provide for child's needs "for six months prior to the filing of [the] petition," that failure was "reasonable and lawful" within the meaning of

---

[10] Father states that his present fitness as a parent does not require that child be returned to his custody immediately, and, indeed, he asserts that his understanding of child's current needs and "transition" issues demonstrate his present fitness. Father's point is well taken. This proceeding does not involve custody issues or the rights of grandparents or other persons who have developed a child-parent relationship with child. *See O'Donnell-Lamont and Lamont*, 337 Or 86, 97, 91 P3d 721 (2004), *cert den*, 125 S Ct 867 (2005) (distinguishing third-party custody disputes from proceedings to terminate parental rights). The only issue here is whether father's parental rights should be terminated, not whether immediate placement in father's home is warranted.

[11] As noted, because the Court of Appeals affirmed the trial court's termination on "unfitness" grounds, it did not address neglect.

ORS 419B.506, because the state actively prevented father from providing for child's needs. There was no neglect.

The trial court, as noted, concluded that father's conduct did not constitute "abandonment" under ORS 419B.508, which provides for termination of parental rights when a child is abandoned and the identity of the parent cannot be determined. The state does not contest that conclusion. However, the state argues that father effectively "abandoned" child through the conduct—including his prolonged lack of contact with child—described above. That abandonment, the state argues, constitutes "unfitness" under ORS 419B.504.[12]

■ We are sympathetic to the state's interest in requiring parents to meet their parental obligations and in quickly securing stable alternative arrangements when parents fail to do so. However, in our view, the structure of ORS 419B.504 is not amenable to the state's argument. As discussed in detail above, that statute focuses first on whether a parent is *presently* "unfit by reason of conduct or condition seriously detrimental to the child." A parent's past failure to establish or maintain a relationship with child, standing alone, will not ordinarily be, and on the facts here is not, sufficient to demonstrate that the parent is presently unfit. Moreover, the legal concept of abandonment of a person's right or interest generally requires proof of intent to abandon. *See De Haven & Son Hardware Co. v. Schultz*, 122 Or 493, 497, 259 P 778 (1927) ("Abandonment is a matter of intention and is to be determined in the light of all of the facts and circumstances."). Here, father unfortunately failed to play an active role in child's life when he should have. However, from the time that DHS contacted him in 1999 regarding mother's inadequacy, father consistently maintained that, if his paternity could be confirmed, he would assume his parental responsibilities. Neither the trial court nor the Court of

_____

[12] As noted previously, the Court of Appeals concluded that abandonment no longer was an issue in this case because the trial court had rejected the state's abandonment claim and the state had not cross-assigned error from that holding. 340 Or at 442 n 7. The Court of Appeals was correct that the state did not cross-assign as error the trial court's holding that the state had failed to prove abandonment under ORS 419B.508. The state did, however, cross-assign as error the trial court's rejection of its "abandonment-as-unfitness" claim.

Appeals found that father had abandoned child by intentionally relinquishing his parental rights, and nothing in the record supports that conclusion.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.