239 P.3d 505 (2010)
237 Or. App. 245
In the Matter of Z.H., a Child.
State of Oregon and Department of Human Services, Petitioners-Respondents,
v.
R.H., Appellant.
090203J; Petition Number 090203J02; A144082.
Court of Appeals of Oregon.
Argued and Submitted April 29, 2010.
Decided September 15, 2010.
*506 Shannon Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.
Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondents. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Justice J. Rillera, Assistant Attorney General.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
SCHUMAN, P.J.
Father appeals from a judgment of the juvenile court finding jurisdiction over his son, Z, and from parts of the dispositional judgment in the same case requiring father to undergo counseling in Oregon and to participate in a psychosexual risk assessment. He argues, first, that the juvenile court erred in failing to strike several of the allegations in the state's dependency petition because they were insufficient to establish jurisdiction; second, that, even if those allegations were sufficient, the state failed to prove them by a preponderance of the evidence; and third, that the remedies ordered by the juvenile court do not bear a rational relationship to the jurisdictional findings that brought Z within the court's jurisdiction. We affirm.
Under ORS 19.415, which went into effect before the notice of appeal was filed in this case, we can choose between reviewing the juvenile court's findings de novo or applying our usual standard of review. Neither party requests de novo review, and we do not choose to exercise it. We therefore accept the court's findings of fact if there is any evidence to support them. Ball v. Gladden, 250 Or. 485, 488, 443 P.2d 621 (1968).
Father and mother have fraternal twins, Z and daughter, who were born in May of 1993. Mother is not party to this appeal and the state has dismissed the petition insofar as it relates to daughter; the appeal concerns only father and the son, Z. In 1999, mother filed a restraining order against father, apparently in response to an incident in which father had physically assaulted Z, and also in response to Z's accusation that father had sexually abused him. Shortly thereafter, mother and the children moved to Hawaii. Beginning at that point, father stopped having contact with Z.
Eventually, mother and the children returned to Oregon. In 2007, mother contacted the Department of Human Services (DHS) because she was struggling with Z's behavioral problems and was considering an out-of-home placement. DHS and mother ultimately decided that such a step was unnecessary because mother and Z were undergoing a variety of therapeutic services. However, in 2008, mother again contacted DHS to request out-of-home placement for Z, and this time DHS agreed that such placement was in Z's best interest. Mother signed a voluntary agreement placing Z in the legal custody of DHS. Father, still not in *507 contact with the family, was not a party to the agreement. Z was first placed at Maple State, and then, in November 2008, he was transferred to St. Mary's, a residential treatment facility for adolescent boys. He was, and at the time of the hearing he remained (in the court's words), "a vulnerable child with important psychological burdens."
In the spring of 2009, father returned to Oregon to join the family after a 10-year absence. When Z's DHS caseworker learned about father's return, she alerted mother to concerns about father living in the family home, where daughter still lived, because of the past sexual and physical abuse allegations against him. Mother told the caseworker that she had reason to believe that the allegations were not true, but agreed not to allow father to have unsupervised time with daughter. Since his return, father has contacted Z through a few letters and two visits, both in June 2009.
Aware of Z's earlier accusations of sexual abuse, Z's caseworker explored that topic with him. He consistently told her that his statements about his father's physical and sexual abuse were true, and he never recanted to the caseworker. However, Z's therapist testified that, when she discussed the abuse with Z after father had reestablished contact, Z's recollection began to change. He reportedly told her, "It is okay that [father] abused me. I don't care," and, later, "Maybe it wasn't even my dad. Maybe my mom told me it was dad. * * * Maybe it was someone else. Maybe I don't even remember it, and mom just told me." The therapist concluded, and the trial court agreed, that Z was confused about the issue of father's abuse.
In July 2009, DHS caseworkers visited the family home to reevaluate the family plan. DHS was trying to learn why mother and father were not more involved and what could be done to help the family. After speaking with DHS at the home visit, mother signed an agreement to participate in services, and father orally agreed to undergo a psychosexual evaluation.
About a week after that meeting, mother, father, and daughter moved to Hawaii with no warning to Z or DHS. Circumstances suggest, and the trial court found as fact, and we agree, that the parents "fled Clackamas County and the state of Oregon to avoid involvement with" DHS. Only after she had arrived in Hawaii did mother call Z to let him know that the family had relocated. Because mother was no longer in Oregon, DHS terminated the voluntary custody agreement and took Z into protective custody.
A dependency hearing was held in November 2009. At the time, mother and father were still in Hawaii and were not allowed to appear by phone; consequently, neither testified at the hearing. After the presentation of evidence by Z's caseworkers and therapists, the juvenile court found that Z, who was 16 years old, was within the court's jurisdiction. The court made the following findings:
"Specifically the Court finds, consistent with the allegations of the amended petition, that [Z] has accused his father of sexually abusing him.
"Secondly, that the father fled Clackamas County and the state of Oregon to avoid involvement with the child welfare agency.
"* * * * *
"Father has abandoned the child.
"The father lacks a relationship with the child [and] needs the assistance of a child welfare agency to establish a safe and meaningful relationship with the child.
"Those findings are consistent with the conclusion under ORS 419B.100; that in the first place, under (1)(a), [Z] is beyond the control of the parents since they are now in Hawaii, and he is left here in Oregon.
"The Court makes a further finding that [Z], although he is 16 years old, is a vulnerable child with important psychological burdens. He is not the kind of child, as some are at 16, that could be described as, for example, self-reliant. He is not. He needs his parents. He needs the benefit of adult supervision. He needs the benefit, now under these circumstances, of the Department of Human Services.
"Secondly, I find that consistent with [ORS] 419B.100 his condition or circumstances *508 are such as to endanger the welfare of [Z], since he is vulnerable and his parents are not here.
"* * * * *
"And further, consistent with the allegation of the petition, under [ORS 419B.100(1)(e)], the Court finds that * * * [Z's] father has very little to do with his life.
"* * * * *
"Father also failed to provide [Z] with the care, guidance and protection necessary for his physical, mental or emotional well being on the facts of this case."
The court ordered father to (among other things) participate in family counseling in Oregon (as opposed to by phone from Hawaii) and to "participate in a psychosexual risk assessment and follow all recommendations." Father appeals from the jurisdictional decision and the two aforementioned conditions.
A brief overview of the procedures involved in a juvenile dependency case will help put the issues on appeal in context.
"`[T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and * * * [w]hose condition or circumstances are such as to endanger [his or her] welfare * * *.' ORS 419B.100(1)(c). To establish jurisdiction on that basis, a party must file a petition in conformance with ORS 419B.809. Among other requirements, that petition `shall * * * [c]ontain the facts that bring the child within the jurisdiction of the court, including sufficient information to put the parties on notice of the issues in the proceeding.' ORS 419B.809(4)(b). The court shall then hold a hearing on the petition. ORS 419B.305. After the proponent of the petition has presented evidence, any other party, without waiving the right to offer evidence in the event that the motion is denied, `may move for dismissal of any or all of the allegations of the petition on the ground that[,] * * * if proven, the allegations do not constitute a legal basis for the relief sought by the petition.' ORS 419B.890(1)."
State ex rel. Juv. Dept. v. N. W., 232 Or.App. 101, 107-08, 221 P.3d 174 (2009), rev. den., 348 Or. 291, 231 P.3d 795 (2010). If the motion to dismiss is denied, or if no party makes one, the court determines whether the allegations have been proven. That determination ends the jurisdictional phase of the dependency hearing; if the court finds that it has jurisdiction, the hearing moves into the dispositional phase, after which the court issues orders concerning what steps must be taken in the future.
On appeal, we may beand in this case, we arecalled on to decide several issues: whether the allegations in the petition are collectively sufficient, if proven, to establish jurisdiction, Id. at 109, 221 P.3d 174; whether any or all of the allegations are proven by a preponderance of the evidence, ORS 419B.310(3); and whether the remedy that the court orders is in whole or in part rationally related to the allegations that the court has found to be proven, State ex rel Juv. Dept. v. G.L., 220 Or.App. 216, 223, 185 P.3d 483, rev. den., 345 Or. 158, 190 P.3d 379 (2008).
In his first three assignments of error, father attacks the petition, arguing that the juvenile court erred in failing to strike the allegations that claimed (1) Z had accused father of sexually abusing him; (2) father had fled Clackamas County and the State of Oregon in order to avoid involvement with the court and DHS; and (3) father lacked a relationship with Z and needed the assistance of DHS to establish a safe and meaningful relationship with him. Father argues that none of these allegations state how the factual circumstance endanger Z. State ex rel. Juv. Dept. v. Randall, 96 Or. App. 673, 675-76, 773 P.2d 1348 (1989). Father acknowledges that he did not preserve these claims of error at the dependency hearing, but maintains that we should review them because they are plain error. ORAP 5.45(1). We disagree. One of the necessary prerequisites for plain error review is that the claimed error be "obvious," or "not reasonably in dispute." State v. Brown, 310 Or. 347, 355, 800 P.2d 259 (1990). The allegations in a petition are viewed as a whole, with each one potentially conditioned or amplified *509 by the others. State ex rel. Dept. of Human Services v. Shugars, 202 Or.App. 302, 317-18, 121 P.3d 702 (2005); N. W., 232 Or.App. at 108, 221 P.3d 174. Further, some allegations state facts that, if true, so obviously endanger the welfare of a child that no express connection between the fact and the danger need be drawn. Randall, 96 Or.App. at 676, 773 P.2d 1348. Under these standards, it is not obvious beyond dispute that the state needed to explain why Z's welfare would be endangered by father, having abandoned his relationship with Z, now fleeing from involvement with the social service agency whose help was necessary in order to allow him safely to reestablish that relationship.
Further, even if we were to conclude that the juvenile court committed plain error, we would still have to decide whether to exercise our discretion to review that error. Ailes v. Portland Meadows, Inc., 312 Or. 376, 382, 823 P.2d 956 (1991). One of the factors that we consider in deciding whether to exercise our discretion to review plain errorpresuming for the sake of argument that there was plain error hereis whether the record would have developed differently if the appellant had raised at trial the argument it raises for the first time on appeal. State v. Thackaberry, 194 Or.App. 511, 516-17, 95 P.3d 1142 (2004), rev. den., 338 Or. 17, 107 P.3d 27 (2005). Had father objected to the sufficiency of the allegations, as expressly authorized by ORS 419B.890(1), the state or the court could have amended the petition so as to supply any necessary factual detail. ORS 419B.809(6). We therefore do not address father's first three assignments of error.
Next, father argues that the trial court erred in concluding that the state proved by a preponderance of the evidence that father had abandoned Z. Because, as noted above, we have not chosen to exercise de novo review, our task is to determine whether the historical facts that the court found are supported by any evidence, and then to determine whether, as a matter of law, those facts provide a basis for juvenile court jurisdiction under ORS 419B.100(1)(c).
Father argues that in order to prove that he abandoned Z, the state had to prove that father "relinquish[ed his] parental rights with the intent of never reasserting them." We agree with father that abandonment requires proof of intention; as the Supreme Court held in State ex rel. Dept. of Human Services v. Rardin, 340 Or. 436, 450, 134 P.3d 940 (2006), a termination case, "[T]he legal concept of abandonment of a person's right or interest generally requires proof of intent to abandon. See De Haven & Son Hardware Co. v. Schultz, 122 Or. 493, 497, 259 P. 778 (1927) ('Abandonment is a matter of intention and is to be determined in the light of all the facts and circumstances.')." In this case, father argues,
"[t]he mere fact that mother and father moved to Hawaii in July 2009 fails to prove that father `abandoned' [Z]. * * * [The] record reflects that mother and father were living together in Hawaii * * *, that mother contacted [Z] to inform him of their move, that mother continued to attempt to contact [Z], and that [Z] refused that contact. Even if father did not himself attempt to contact [Z] after the family moved, that circumstance existed only for the three months preceding the jurisdictional trial. Those circumstances fail to support the inference that father gave up his rights to [Z] with the intent of never reasserting them."
We emphatically disagree. It is exactly father's move to another state and failure even to attempt to contact Z, immediately following a 10-year period of complete lack of contact, that directly supports the inference that father intended to relinquish his parental rights. We reject father's fourth assignment of error.
In his fifth through seventh assignments of error, father argues that the trial court erred in concluding that Z was "beyond the control of [father]"; "dependent for care and support on a public or private child-caring agency that need[ed] the services of the court in planning for [Z's] best interest"; and that father "failed to provide [Z] with the care, guidance and protection necessary for [Z's] physical, mental or emotional well-being." Father argues that, because mother entered into a voluntary agreement with DHS, Z was still within mother and father's control when they were in Hawaii and that they were *510 caring for Z's needs by ensuring Z was safe at St. Mary's. Again, we are not persuaded. Even if we were to conclude that a parent who voluntarily relinquishes care, guidance and protection of a child to a state agency is still providing care, guidance and protection to the childa conclusion that we need not and do not reachfather's argument would still be unavailing. Only mother was a party to the voluntary custody agreement with DHS; father was not a part of Z's life at that time. Further, the agreement itself requires that the parent live in the state of Oregon, and once mother and father moved to Hawaii, DHS terminated the voluntary agreement and took Z into protective custody. Thereafter, Z was fully under the care and supervision of DHS and no longer under control, protection, or guidance of father.
Finally, father argues that the juvenile court erred in ordering father to complete a psychosexual evaluation and to participate in family counseling in Oregon, as opposed to by phone from Hawaii. Specifically, father argues that, because the state did not prove by a preponderance of the evidence that father sexually abused Z, there is no rational relation between the psychosexual evaluation and the court's jurisdictional basis. Father also argues that "the juvenile court had no legal or factual basis for requiring father to return to Oregon to be reunified with [Z]. On the contrary, [Z's] counselor testified that family counseling could occur telephonically."
ORS 419B.343 requires that, if a court orders case planning, that it "bears a rational relationship to the jurisdictional findings that brought the child within the court's jurisdiction under ORS 419B.100." As to the psychosexual evaluation, the trial court found that
"the evidence is conflicting around whether abuse occurred. That I think is safe to say. The allegation was that [Z] had said that; that he was the victim of abuse. The fact that there has been no determination, no final determination after, say, for example, a trial to resolve that issue.
"So from the Court's perspective, it is a circumstance that has to be described as one that involves risk, and the question becomes how to manage risk in the face of an ambiguity or something that has not been determined, that is not known.
"[B]ut when it becomes a matter where there is a risk, and the risk is of a very significant nature, and it involves a child, then to my mind, requiring that steps be taken to remove the risk, to understand it better so it can be managed, becomes rationally related to the groundsthe basis for jurisdiction."
We agree with the trial court. Because it is unclear whether sexual abuse did occur and it is clear that Z is confused about what happened, the evaluation is a rational way to see if father does, in fact, pose a risk and, if so, what treatment is necessary.
Lastly, the court's order that father return to Oregon for therapy and treatment is also rationally related to the reasons why the court took jurisdiction. Z has suffered because he feels abandoned by his family, and the court took jurisdiction because it found father fled the state and abandoned Z. By requiring father to return to the state and to begin building a relationship with Z, the court was requiring father to be an active presence in Z's life in order to remedy one of the reasons why the court took jurisdiction in the first place. We therefore reject father's last assignments of error.
Affirmed.