Argued and submitted April 6, affirmed July 20, petition for review denied October 6, 2011 (351 Or 216)

In the Matter of M. M. and M. M.,
Children.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. K. M.,
*Appellant.*

Multnomah County Circuit Court
2006806511, 2006806512
Petition Number 106365M
A146913

160 P3d 693

Megan L. Jacquot argued the cause and filed the brief for appellant.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Mother appeals from a judgment terminating her parental rights to her twins, a son and a daughter, on the ground of unfitness under ORS 419B.504. Mother acknowledges her problems in the past with alcohol, but challenges the trial court's rulings that, at the time of trial, (1) she was unfit based on conduct or conditions that were seriously detrimental to the twins and (2) integration of the twins into her home was improbable within a reasonable time because her conduct or conditions were unlikely to change. Based on our *de novo* review of the record, we affirm the trial court's judgment.

Although the parties diverge in their views of mother's mental health status, most of the facts concerning mother's history are not in dispute on appeal. Mother is an alcoholic. In January 2008, the twins became wards of the court when mother left them at home sleeping to drive to the store and was arrested in Multnomah County. She was charged with driving under the influence of intoxicants (DUII), felony driving while her license was suspended or revoked, other offenses related to her driving and encounter with the police, and child neglect. As a result of mother's arrest, the Department of Human Services (DHS) obtained custody of the twins, who were seven and one-half years old, and placed them in foster care. Mother pleaded guilty to the charges in Multnomah County, and mother's probation for a felony DUII she committed in 2003 in Umatilla County was revoked. As a consequence, mother was incarcerated for over two years.

During her term of imprisonment, mother completed various parenting and other self-improvement programs. For the most part, mother successfully utilized resources while she was incarcerated. Also, as part of her plea agreement in Multnomah County, mother chose to enter a court-supervised DUII intensive supervision program, or DISP, after her release from custody.

In the meantime, in April 2009, DHS filed a petition to terminate mother's parental rights.[1] DHS alleged that

---

[1] The petition was also brought against the legal father of the twins, and the termination of his parental rights in May 2009 is not the subject of appeal.

mother was unfit on various grounds and had neglected the children and that it was in the children's best interest to terminate her parental rights. Mother was released from prison in March 2010, and the trial took place in August and September 2010.[2] During the approximately six months before trial, mother had been living in transitional housing at the YWCA, where she is able to have children reside with her. At the same time, mother was in an outpatient alcohol treatment program and was intensively monitored for alcohol use through the DISP. She had not been found to have been drinking since her arrest in January 2008.

At trial, mother provided evidence that when she is sober, she is an adequate parent. However, mother has a long history of repeated periods of alcohol abuse, and when she is drinking, she cannot adequately parent and neglects the children. Mother's drinking had caused her to lose custody of the twins at various points and to commit crimes before 2008.

After the birth of the twins in 2000, mother had three other contacts with DHS because of alcohol abuse that led to placement of the children in state care: first, when the twins were infants, for two and a half months, when mother was arrested; second, for a brief period in 2004, when mother left the twins alone in the house while her partner was working nearby; and, third, for four months in 2006, when Portland police took mother into protective custody because she was causing a disturbance outside her apartment and was so inebriated that she was unable to care for herself. Less than three months before mother was arrested in 2008, DHS opened another investigation into mother's care of the twins after she forgot to pick them up after school.

Besides her arrests in 2003 and 2008, mother was arrested and convicted for driving with a suspended license and committing burglary in 2000. Mother also had several contacts with police concerning her drinking while she had custody of the twins: the April 2006 incident when the twins were removed and one in August 2007, when police were

---

[2] The trial was originally set for 2009 but was delayed for further investigation of new information concerning whether the Indian Child Welfare Act applied to the case given mother's status as a tribal member. The parties agree that the act does not apply.

called about an altercation involving mother. Before the twins were born, mother had engaged in conduct between 1987 and 1999 that led to numerous other criminal convictions, including for alcohol-related crimes such as DUII (five times); driving while her license was suspended or revoked (four times); and reckless driving, as well as for crimes such as burglary and escape.

Mother entered various alcohol treatment programs, both before and after she had the twins. Mother was in a series of residential and outpatient treatment programs starting in 2004 to 2007. This included a residential program of several months in Baker in 2004, followed by a four-month residential program she entered in Portland in 2004 and completed in 2005. Mother then entered an outpatient program, during which she could not sustain sobriety, and in 2006 she entered the Portland residential program again for four months. After successfully completing the residential treatment, she entered an outpatient program with the same provider in 2006, but she did not successfully complete that program and was discharged from it in 2007. Mother also had been in alcohol treatment earlier; she completed a substance abuse treatment program in the mid-1990s. Nevertheless, despite treatment, mother relapsed repeatedly into uncontrolled drinking. Mother was drinking in 2007 and prior to her arrest in 2008, and she had not availed herself of outpatient alcohol resources she knew about and that had been referred to her when she left the outpatient program in 2007.

Mother testified at trial that, as a child, she had been physically and sexually abused by her father. In 2004, a staff psychiatrist she was referred to by her alcohol treatment program had performed a psychiatric assessment and diagnosed her with "Anxiety disorder, NOS (rule out social phobia, social anxiety)"; "Posttraumatic stress disorder traits"; and "alcohol dependence." The same psychiatrist in 2006 noted mother had "PTSD," "Depressive Disorder NOS," and "Social Phobia," and started her on medication. When she completed residential treatment in 2006, mother was discharged with a recommendation that she address her identified mental health issues. Similarly, the outpatient treatment program mother failed to complete noted that mother needed mental health therapy at the time of discharge in early 2007. Yet

mother was not in regular treatment for these issues before she was arrested in 2008 and the children were placed in foster care. Although mother testified that she had fully followed through with a mental health counselor she liked at the outpatient alcohol treatment program she was attending in 2006 to 2007, testimony of the DHS caseworker assigned to mother's case at the time and treatment records showed that mother had not, and that the counselor recommended a psychological evaluation.

When mother was in prison, she was seen by a psychiatrist, who prescribed medication for her. After her release, although one mental health assessment of mother conducted by an intern at her alcohol treatment program in April 2010 concluded that mother suffered only from alcohol dependence in sustained, full remission, mother told the intern (and testified at trial) that she was mentally stable and no longer experienced any problem. Yet, in the spring of 2010, mother told a mental health counselor at the YWCA with a master's degree in counseling that she suffered from social phobias. That YWCA counselor concluded that mother was potentially a "dual diagnosis" client, one suffering from both substance abuse and mental health issues.

Various other witnesses called by the state, including mother's current alcohol treatment counselor, mother's probation officer, and a DISP case manager, testified that mother's statements in 2010 indicated that she had some sort of mental health problem that was not being addressed. The alcohol treatment counselor, who has a master's degree in counseling psychology, testified that she and the alcohol treatment program's psychologist concluded that mother needed mental health counseling outside their agency. She opined that "if one has mental health problems that are untreated, they're at higher risk for relapse" and that a "huge component" of mother's potential success was "treatment of her underlying mental health issues." At a DISP violation hearing mother had in June 2010, one of the supervising judges in DISP ordered that mother undergo a psychological evaluation so that she could successfully complete probation. At trial, though, no psychological evaluation of mother had occurred pursuant to that order because mother refused one due to the upcoming termination trial.

The twins were 10 years old at the time of trial. Their first two foster placements after their removal in 2008 were not good for the twins, but at the time of trial, the twins were doing better in a therapeutic foster home, where they could stay until they were either released for adoption or released to mother. An aunt who remained in contact with the children during their time in foster care testified concerning her observations of the twins, their reports of living conditions with their mother, and their desires for a permanent home. Various evaluators and therapists found that the children had problems attributable to mother and her instability, such as developmental delays, behavior problems, mood disorders, and PTSD, and that both children needed therapy and immediate permanency.

Several months before trial, relatives came forward as an adoptive resource for the children, and the twins met them two weeks before the trial. Although the twins are not eligible for tribal membership, there was some testimony that the potential adoptive parents can provide the twins with cultural ties to mother's heritage.

The trial court found that the state had proved most of the allegations in the petition, including that mother had an emotional or mental illness and a long history of alcohol abuse; she had physically neglected the twins when she had them in her care; the twins suffered from failure to thrive in her care; mother's criminal activity interfered with her ability to provide minimally adequate care; her history of instability interferes with her parenting; mother did not make the adjustment to enable return of the twins after reasonable efforts by social services and lacked a plan to resume care of the twins; mother's ability to parent is far lower than what is required for children with developmental and other problems; and mother's conditions are not likely to change within a reasonable time. The court found that termination was in the best interests of the twins and entered the judgment terminating mother's parental rights in October 2010.

Mother argues on appeal that, although her alcohol addiction and her related criminal conduct had at times caused detriment to the twins in the past, she has addressed her alcohol addiction in a renewed and different way and had

been sober for two and a half years as of the time of trial, including for the six-month period she had been living in the community. She argues that this time, she has changed for good, and she is not now unfit. The state argues that mother has current alcohol addiction and mental health problems that are seriously detrimental to the children and that mother, who has been unable to permanently and successfully change for years, has not shown a difference from her past pattern.

The basic legal standards that apply are established. The statute governing termination of parental rights for unfitness, ORS 419B.504, provides, in relevant part:

"The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child or ward and integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(1) Emotional illness, mental illness or mental retardation of the parent of such nature and duration as to render the parent incapable of providing proper care for the child or ward for extended periods of time.

"* * * * *

"(3) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.

"(4) Physical neglect of the child or ward.

"(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make it possible for the child or ward to safely return home within a reasonable time or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"(6) Criminal conduct that impairs the parent's ability to provide adequate care for the child or ward."

In *State ex rel SOSCF v. Stillman*, 333 Or 135, 145, 36 P3d 490 (2001), the Supreme Court explained that ORS 419B.504 sets a two-part test for a termination of parental rights case grounded on parental unfitness:

> "First, the court must address a parent's fitness: The court must find that the parent is 'unfit by reason of conduct or condition seriously detrimental to the child.' That, in turn, requires a two-part inquiry: The court must find that: (1) the parent has engaged in some conduct or is characterized by some condition; and (2) the conduct or condition is 'seriously detrimental' to the child. Second—and only if the parent has met the foregoing criteria—the court also must find that the 'integration of the child into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change.' "

To determine whether a proven condition or conduct of the parent is "seriously detrimental," the court must "measure the degree to which that conduct or condition has had a seriously detrimental effect on the child." *Id.* at 146. And the conditions or conduct of the parent can be considered alone or in combination to determine whether they have a seriously detrimental impact on the child. *State ex rel SOSCF v. Mellor*, 181 Or App 468, 476, 47 P3d 19 (2002), *rev den*, 335 Or 217 (2003).

A key component of review of a parent's fitness is the relevant time period for the examination. "Evidence that grounds for termination may have existed previously, without evidence that those grounds continue to exist at the time of the hearing, is insufficient to support a conclusion that parental rights should be terminated." *State ex rel Dept. of Human Services v. A. L. S.*, 228 Or App 700, 721, 209 P3d 817 (2009); *accord Stillman*, 333 Or at 148-49. Instead, whether a parent is unfit must be measured at the time of trial. *State ex rel Dept. of Human Services v. Simmons*, 342 Or 76, 96, 149 P3d 1124 (2006). We also apply a high standard of proof. "The facts on the basis of which the rights of the parents are terminated, unless admitted, must be established by clear and convincing evidence." ORS 419B.521(1). Under that standard, the court "must find that the evidence establishes that the truth of the facts asserted is highly probable." *Id.* at 95.

Applying those standards, we agree that the state met its burden of proving that, as of the time of trial, it is highly probable that mother engaged in conduct or had conditions that are seriously detrimental to the twins. Although mother currently denies any mental health problems, records admitted as exhibits at trial show that a psychiatrist diagnosed her four years before the trial and placed her on medication and that mother received antidepressant medication in prison. In 2010, mother admitted to continuing social phobias. Various mental health and correctional system witnesses testified that mother appears to have an ongoing mental health problem that needs to be addressed. And, mother was ordered to undergo a psychological evaluation in DISP. The absence of a psychological evaluation in 2010 does not preclude a finding, by clear and convincing evidence, that mother has untreated emotional or mental health problems, as the trial court found. Furthermore, the evidence established that mother had failed to address her emotional or mental health problems in a sustained and serious manner, despite opportunities to do so, as of the time of trial.

At the same time, mother remains an alcoholic. She was in a highly monitored living situation through the DISP at the time of trial, and her current period of sobriety had yet to be tested under typical parenting conditions she and the twins would experience outside DISP and the transitional housing she has at the YWCA. Standing alone, whether mother's current remission is lasting appears questionable in light of her history. When we consider mother's alcoholism together with mother's emotional or mental health problems, the evidence of the increased likelihood of relapse when mental health problems are not treated, and mother's failure to address her emotional or mental health problems to effect a lasting change, the evidence is clear and convincing that mother has engaged in conduct or is characterized by a condition that must be considered for its effects on the twins under ORS 419B.504(1), (3), and (5). *See A. L. S.*, 228 Or App at 721-22 (mother failed to make an adequate adjustment to her substance addiction and to take necessary steps to effect lasting change when she continued in ineffective treatment and did not participate in recommended residential treatment).

Although mother's alcohol-induced neglect of the children and mother's criminal conduct making her unavailable as a parent were not current at the time of trial, mother's current conditions do pose a serious detriment to the children. As the state's experts testified, the twins have various developmental, behavioral, and mental health problems attributable to mother, even taking into account additional trauma the twins suffered from bad foster care placements, because of the effects of mother's alcoholism and unaddressed mental health conditions.

In the second part of the inquiry, the state must establish that (1) integration of the children with the parent is improbable within a reasonable time (2) because the conduct or conditions of the parent are not likely to change. *Stillman*, 333 Or at 145. A "reasonable time" focuses on the child's needs. *State ex rel SOSCF v. Freeman*, 174 Or App 194, 204-05, 23 P3d 1009, *rev den*, 332 Or 430 (2001). A "reasonable time" is defined as a period "that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(20). It therefore is "a child-specific inquiry" and requires "testimony in psychological and developmental terms regarding the particular child's requirements." *Dept. of Human Services v. D. M. T.*, 239 Or App 127, 138, 243 P3d 836 (2010), *rev den*, 349 Or 654 (2011) (quoting *Stillman*, 333 Or at 146). The determination of whether there is an improbability of timely integration due to conduct or conditions not likely to change occurs at the time of trial. *Id.* at 140. Through ORS 419B.504, "the legislature assumes that parents can change their conduct and that, if the change is both genuine and lasting, the state may not terminate their parental rights for unfitness." *State ex rel Dept. of Human Services v. Rardin*, 340 Or 436, 447, 134 P3d 940 (2006) (emphasis omitted).

Mother argues that, at the time of trial, she was able to integrate the children into her home within a reasonable time. The state argues that mother is vague about planning for the return of the twins and that she relapses when outside the confines of prison, a residential structure like the YWCA, or a living situation with another adult in the home. The state contends that integration of the children with mother

was improbable within a reasonable time because mother was unlikely to change within the timeframe the twins now need.

We conclude that the state met its burden of proving that it was highly probable that mother's children could not be returned to her custody within a reasonable time due to conditions unlikely to change. DHS and others had made reasonable efforts to provide her with assistance, but mother had not addressed her mental health problems, which in turn impacts her alcoholism. Mother's 2003 DUII arrest and resulting conviction provided a serious warning to mother. Mother has had since at least 2006, when the children were placed in foster care before mother's arrest in 2008, to make a lasting change with regard to both her emotional or mental health and substance abuse problems. She has not been able to do so. The state's expert psychologist testified that it would take a person in mother's situation, with a lengthy history of alcohol abuse with incarcerations, treatment and relapses, and untreated mental health issues, a considerable amount of time to successfully address her own issues and to be in a position to parent. He and the children's therapists, though, testified that permanency was needed immediately and that the children were not in a position to wait. Accordingly, we conclude that integration of the children with mother is improbable within a reasonable time.

Finally, if the state proves unfitness under ORS 419B.504, the court must decide whether a disposition terminating parental rights is in the best interest of the child pursuant to ORS 419B.500. We recognize that mother and the twins still have a relationship, but in light of the findings above and the availability of an adoptive family related to mother and with ties to mother's cultural background, we conclude that it is in the twins' best interests that mother's parental rights be terminated and that they be freed for adoption.

Affirmed.