Argued and submitted January 2, affirmed May 21, petition for review
denied July 23, 2008 (345 Or 158)

In the Matter of K. M. and K. M.,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF LINN COUNTY,
*Respondent,*

*v.*

G. L.,
*Appellant.*

Linn County Circuit Court
J060443, J060444
Petition Numbers 07072J, 07073J
A136566

185 P3d 483

Paul S. Petterson argued the cause and filed the brief for appellant.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

■     Mother appeals a judgment of dependency jurisdiction and disposition. *See* ORS 419B.100; ORS 419B.325. She argues that the state failed to present evidence sufficient to support jurisdiction and that the juvenile court lacked the authority to order her to undergo a psychological evaluation. We write only to address whether the trial court was authorized to order mother to submit to a psychological evaluation. We review the record *de novo*, ORS 419A.200(6)(b), and the court's legal conclusions for errors of law, *State ex rel SOSCF v. Dennis*, 173 Or App 604, 606, 25 P3d 341, *rev den*, 332 Or 558 (2001). We conclude that the juvenile court possessed the authority to order mother to submit to a psychological evaluation. Accordingly, we affirm.

    We briefly recount the family's involvement with DHS prior to the events that prompted the filing of the present petition for dependency jurisdiction. Mother and father have a historically violent and tumultuous relationship. Mother has obtained multiple restraining orders against father, the first a few months before they married in 2000. Two years later, mother left father. She and parents' two children, KD and KS, became homeless, and the children were removed from her care after being "found outside with no shoes, no coat, cold, dirty, hungry, scared[, and suffering from] head lice." Mother was ordered to complete services, which she apparently did because the children were returned to her care in June 2004.

    At that time, mother assured the caseworker that "she wasn't going to be in a relationship with [father]" and that she had "no plans to reconnect" with father. Father completed no services, and he was ordered as a condition of post-prison supervision to stay away from mother.[1] Shortly after the children were returned, mother and father reconciled, and mother dismissed a second restraining order she had obtained against father during the dependency case.

    The family again became involved with DHS in 2005 following a referral for drug-related issues. Father agreed to

---

[1] In May 2005, father was arrested based on his contact with mother.

execute a voluntary services plan and, after a brief period in the care of mother's grandmother, the children stayed with father. Mother refused to execute a voluntary services plan. Instead, she left the children in father's care, explaining to the caseworker that "she would prefer that the children didn't live with him but [that she] did not feel that they were at imminent risk of living with him at that point[; s]he said that she had some things that she needed to take care of [elsewhere] * * * to address the addiction issues." By the summer of 2006, mother had returned and she, father, and the children moved in with mother's grandmother.

In August 2006, after learning that father had been arrested, a caseworker visited mother and the children at mother's grandmother's home. Mother "again said that she was not in a relationship with [father] and that she had not been allowing him to stay there" because father was "dangerous and * * * they cannot be in a relationship together." Both children and father disputed mother's claim that father was not living with the family and that mother and father were not in a relationship. The caseworker offered mother a voluntary services agreement, and mother agreed to get a restraining order against father. She failed to do so, and the children were placed in protective custody in August 2006. Because a caseworker failed to appear at the hearing, that petition was dismissed.

In January 2007, DHS learned that mother had again allowed children to have contact with father. Mother contended that the children were visiting someone else's home and father "just happened to be there, again [she] clarified that she understood that he's dangerous." Despite mother's assurances, father was arrested after assaulting one of the children in March 2007. The children told DHS that father had been at the home frequently and that mother was unable to keep him from the home. DHS placed the children in protective custody.

Mother divorced father after the children were removed and before the jurisdictional hearing. She contended at that hearing that she would be able to protect the children from father in the future because she now has the

"legal backing" of a no-parenting-time provision in the dissolution decree. At trial, the caseworker testified that

> "[t]he agency's concerned that many attempts have been made to engage her in services that would really benefit her ability to follow through and protect these children and so there's the concern about the continued refusal of the services or voluntaries, continued refusal to engage in any kind of mental health counseling or [to] continue the children in their mental health counseling, and with the years of repeated comments that's she's made, that she understands he's dangerous [and] she doesn't want anything to do with him and then getting back together with him, that that pattern over the years really is confusing, and the agency would like insight [from a psychological evaluation] as to if there is some underlying mental health diagnosis that may be leading to this so that we can better identify and treat the situation and get all the help that she needs to make sure that the children aren't again exposed to harm and hurt."

The juvenile court found that the state proved that father physically assaulted one of the children, that mother and father have a demonstrated pattern of domestic conflict that threatens their children, that mother had failed to benefit from services designed to help her address the safety needs of her children, and that mother is unable or unwilling to provide for the safety and protection of her children because she continues to allow father to have contact with them.[2]

The juvenile court judge also found that the state failed to prove that a psychological evaluation was "necessary," commenting that he was not aware of a mental health diagnosis that "keeps [mother] from resisting contact with an ex-husband." Despite this finding, he ordered the evaluation because he concluded it would be "helpful just trying to figure out" how mother could do a better job of protecting her children from father than she has done in the past. Accordingly, the court ordered mother to submit to a psychological evaluation as part of its disposition.

---

[2] The juvenile court found that the state failed to prove that mother did not take appropriate action to protect her child during the assault.

On appeal, mother first challenges the sufficiency of the evidence to support dependency jurisdiction. After a *de novo* review of the record, we reject that assignment of error without discussion.

Mother also challenges the court's order that she submit to a psychological evaluation.[3] She argues that the court erred in ordering the evaluation "without a jurisdictional finding of a mental health problem endangering the welfare of the children." According to mother, unless the state proves that she suffers from a mental health condition, the order that she participate in an evaluation was "beyond the trial court's power." The state responds that a court may order a parent to undergo a psychological evaluation to assist DHS in determining what services will help reunify the family so long as the evaluation is in the children's best interests, even if the juvenile court does not find that the parent suffers from a mental health condition endangering the children.

To resolve this dispute, we begin our analysis with the text and the context of the relevant provisions of the juvenile code. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The juvenile code provides that it is "the legislative policy of the State of Oregon to recognize county juvenile courts and departments as a basic foundation for the provision of services to children, wards, * * * and their families." ORS 419A.045. It is also the policy of Oregon for the state to offer "appropriate reunification services to parents * * * to allow them the opportunity to adjust their circumstances, conduct or conditions to make it possible for the

---

[3] The juvenile court also ordered mother to successfully complete any treatment recommended as a result of the psychological evaluation. After oral argument, we requested that the parties submit supplemental briefing regarding whether ORS 419B.387 requires a juvenile court to hold an evidentiary hearing to determine whether treatment was needed before ordering treatment recommended by a psychological evaluation. *See* ORS 419B.387 (requiring that a court find that treatment or training is "needed" and in the ward's best interests before ordering treatment or training). In response, mother argued that "[a] second evidentiary hearing regarding an evaluation's recommendations for treatment is not required by the terms of ORS 419B.387." She also noted that "in this appeal, the lower court's order for a psychological evaluation is assigned as error and has not occurred so there are no treatment recommendations nor any disputes over treatment approaches." Because mother does not contest the validity of the court's order that she submit to any recommended treatment, we consider only whether the court was authorized to order a psychological evaluation.

child to safely return home within a reasonable time." ORS 419B.090(5).

In accordance with the state policy to provide services to reunify families (except in cases where the parent or parents engaged in extreme conduct[4]), DHS must "complete a comprehensive family assessment of risk of abuse[,] * * * assess service needs[,]" and provide any "remedial services needed to ensure the safety of the child." ORS 409.185(2)(b), (c). DHS's planning and provision of remedial services must "bear[ ] a rational relationship to the jurisdictional findings that brought the ward within the court's jurisdiction." ORS 419B.343(1)(a). While "the actual planning and provision of such * * * services is the responsibility of [DHS]," "[t]he court may specify the particular type of * * * services to be provided by [DHS] * * * to the parents or guardians of the wards." ORS 419B.337(2).

■   Mother does not dispute that the text of ORS 419B.337(2) permits the court to specify the particular type of service, such as a psychological evaluation, that DHS must provide to her. Rather, she contends that the limitation that DHS's planning and provision of services must be rationally related to the jurisdictional findings similarly limits the juvenile court's ability to specify services. The state does not dispute mother's statutory interpretation but argues that the order that mother submit to a psychological evaluation *was* rationally related to the jurisdictional findings.

We agree with the parties that the text of ORS 419B.337(2) must be read in the context of ORS 419B.343, which requires that DHS's case planning bear a rational relationship to the jurisdictional findings. ORS 419B.337(2) does not expressly limit the court's power to order that DHS provide a particular type of service. At the same time, the statute obligates DHS to incorporate such orders in its case plan. ORS 419B.337(2) ("The court may specify the particular type of * * * service to be provided by [DHS], but the actual planning and provision of such * * * services *is the responsibility*

---

[4] "Extreme conduct" includes but is not limited to rape, sodomy, or sex abuse of a child, intentional starvation or torture of a child, and abuse or neglect resulting in the death of or serious physical injury to a child. *See* ORS 419B.090(5); ORS 419B.502.

*of the department.*" (Emphasis added.)). Thus, the require-ment of ORS 419B.343 that DHS ensure that its case plan-ning bears a rational relationship to the jurisdictional find-ings must also be understood to require that the court's specification of a particular type of service that DHS provides bears a rational relationship to the jurisdictional findings.

Having determined that the text and context of the juvenile statutes grant the juvenile court authority to order DHS to provide a parent with a particular service only if the service is rationally related to its jurisdictional findings, we next consider whether it was within the court's authority to order mother to submit to a psychological evaluation. Con-trary to mother's assertion, ORS 419B.343 does not limit the provision of psychological services to cases in which a par-ent's mental health condition is a basis for juvenile jurisdic-tion. Rather, it requires only a rational connection between the service to be provided and the basis for jurisdiction.

That requirement was met here. Jurisdiction was based, in part, on mother's unwillingness or inability to pro-tect her children and her failure to benefit from past services designed to assist her in doing so. DHS requested a psycho-logical evaluation to assess mother's service needs with respect to those jurisdictional findings. A caseworker involved with the family since 2005 explained that mother has repeatedly stated "that she understands [that father] is dangerous [and] she doesn't want anything to do with [him], [but then she gets] back together with him," and that DHS requires "insight as to if there is some underlying mental health diagnosis that may be leading to this" before the agency could properly assess mother's service needs. That evidence conclusively establishes that DHS is entitled to a psychological evaluation of mother in order to develop its case plan to include "[a]ppropriate reunifications services to parents * * * to allow them the opportunity to adjust their circumstances, conduct or conditions to make it possible for the child to safely return home within a reasonable time," consistent with the legislative policy to strive for reunifica-tion expressed in ORS 419B.090(5).

■     Accordingly, on *de novo* review, we conclude that, because mother has failed to benefit from past services

designed to address her inability to protect her children, and because DHS is obligated to develop a case plan to provide mother with services to enable her to do so, the court's order for mother to submit to a psychological evaluation bears a rational relationship to the bases the court found for taking jurisdiction. ORS 419B.343(1)(a).[5] The trial court did not exceed its authority under ORS 419B.337(2) by ordering mother to participate in a psychological evaluation.

Affirmed.

---

[5] We reached a similar conclusion under a prior version of the dependency statutes. *See State ex rel Juv. Dept. v. Maginnis,* 28 Or App 935, 937, 561 P2d 1044 (1977) ("[A] juvenile court does, in fact, have the authority to order a psychiatric or medical evaluation of a parent where that evaluation is helpful as an aid in determining what is best for the child—the central inquiry in a termination proceeding as well as all other juvenile proceedings.") (citing *State ex rel Segrest v. Van Hoomissen,* 276 Or 1077, 557 P2d 661 (1976)); *see also State ex rel Dept. of Human Services v. R. N. L.,* 218 Or App 188, 215-16, 180 P3d 704 (2008) (affirming a juvenile court's order that a parent participate in a second psychological evaluation when the first evaluator did not take the child's unique circumstances into account).