AOYAGI, J.
*71 In this juvenile dependency case, mother appeals a disposition judgment ordering her to submit to a psychological evaluation. The Department of Human Services (DHS) requested the evaluation to help it determine whether there is a mental-health component to mother neglecting her three-year-old child, D. Mother argues that there is no rational relationship between the ordered evaluation and the jurisdictional bases and that the juvenile court therefore exceeded its authority under ORS 419B.337(2). DHS contends that the evidence was sufficient to meet the low threshold to establish a rational relationship. As discussed below, we agree with DHS that the minimal standard for a *461 rational relationship is met. In so ruling, we limit our consideration to ORS 419B.337(2) and do not consider mother's untimely-raised alternative argument that the court should have applied ORS 419B.387 instead of or in addition to ORS 419B.337(2). Accordingly, we affirm.
We review the juvenile court's legal conclusions for errors of law and its findings for any evidence. Dept. of Human Services v. B. W. , 249 Or.App. 123, 125, 275 P.3d 989 (2012).
D was born in 2014. Father is incarcerated in Michigan and is unavailable as a custodial resource; he is not a party to this appeal. Mother lives in Oregon and has been D's primary caregiver, but she is addicted to methamphetamine. In May 2017, police responded to a domestic violence incident between mother and her boyfriend and, later the same month, to a report of loud pounding from mother's apartment and a possible theft. D was present on both occasions. After those incidents, DHS received multiple reports about D's living situation, including that D was living at one point in a vehicle with mother and her boyfriend, despite a no-contact order; that D was living in a home where a "huge amount" of methamphetamine use was happening and where drug paraphernalia was within D's reach; and that D was living at another time with mother's sister and her partner, who had a sex abuse conviction. In October 2017, DHS located D and removed him from mother's care. Upon removal, D tested positive for methamphetamine. He was *72 covered in scars, was thin, and suffered gastrointestinal problems. One of D's foster parents-with whom D has been living since about a week after the removal-testified that D was "extremely violent" and "very afraid" when he arrived and repeatedly attacked his foster parents and other people. He was "afraid of everybody and everything and hit everybody." Before scheduled visits with mother, D would express happiness initially but later say that mother was "mean," ask whether mother was "going to freak out on [him]," ask if mother was going to hurt him, and express fear of being left alone with mother.
In January 2018, the juvenile court asserted jurisdiction over D on three bases: (1) "mother has exposed child to unsafe and unsanitary living conditions, including exposure to drugs, drug paraphernalia, and unsafe persons"; (2) "mother has left child with unsafe caregivers without making appropriate plans for the care of the child"; and (3) mother has "an alcohol and/or drug problem which impairs her ability to safely parent" child. Mother admitted to those jurisdictional bases. Mother objected, however, to DHS's request that she be ordered to undergo a psychological evaluation. Mother, who was 20 years old at the time of the jurisdictional hearing, argued that the cause of her poor parenting was obvious-her untreated use of methamphetamine for approximately two years-and that there was no need for a psychological evaluation.
The juvenile court initially agreed with mother that it could not order a psychological evaluation. At the January hearing, the court stated that it had "no power to order a psychological evaluation in this case or, for that matter, a mental health evaluation," because there was no factual basis in the record to do so. At DHS's request, however, the court continued the matter for an evidentiary hearing in February 2018.
By the time of the February hearing, mother had participated in a drug and alcohol assessment, but she had not followed through with treatment, had attended only three of at least 10 offered visits with D, and was in only "sporadic" contact with DHS. DHS argued that a psychological evaluation was appropriate because D's circumstances *73 prior to removal were so bad that they "speak to a level of neglect that rises beyond that which * * * is likely to have been caused by simply a drug addiction alone." In response, mother again argued against a psychological evaluation and asserted that "the problem" was her methamphetamine use. D's attorney then agreed with DHS that the circumstances went "far beyond this just being a drug case" and argued that a psychological evaluation also would help identify "the barriers faced by mother" that caused her to be "slow to engage in services." *462 After the evidentiary hearing, the juvenile court ordered mother to undergo a psychological evaluation. It specifically did so in connection with the first and second bases for jurisdiction, which it referred to collectively as "neglect." In a letter opinion, the court noted that "a psychological evaluation is a very intrusive provision that can expose a parent to significant risk in a case (as well as possibly benefit them)."[1] It expressed the view that DHS should have to prove necessity, not mere helpfulness, for the court to order a psychological evaluation, and it expressly found that DHS had not proved necessity here. Under our existing case law, however, particularly B. W. , 249 Or.App. 123, 275 P.3d 989, the juvenile court concluded that DHS needed to prove only that a psychological evaluation would be "beneficial" in determining services. Applying that standard, the court concluded that, "based on the evidence," an evaluation "would be beneficial and helpful to the agency's determination of services to be provided" and therefore ordered one. (Boldface in original.) Mother assigns error to that order.
We begin with a brief overview of the relevant legal framework. In Oregon, "children are individuals who have legal rights," including the rights to permanency with a safe family, freedom from abuse, and freedom from substantial neglect of basic needs. ORS 419B.090(2)(a). "Oregon's *74 dependency statutes serve to protect and enforce those rights while, at the same time, safeguarding parents' Fourteenth Amendment liberty interests in parenting their children." Dept. of Human Services v. T. L. , 279 Or.App. 673, 677, 379 P.3d 741 (2016). One example of balancing those interests is "that Oregon's policy is to remove an endangered child from his or her parents, but to then make reasonable efforts 'to allow [the parents] the opportunity to adjust their circumstances, conduct or conditions to make it possible for the child to safely return home within a reasonable time.' " Id. at 677-78, 379 P.3d 741 (quoting ORS 419B.090(5) ).
When the juvenile court asserts jurisdiction over a child and places the child in the legal custody of DHS, the court may "specify the particular type of care, supervision or services" that DHS is to provide both to the child and to the child's parents or guardians. ORS 419B.337(2). DHS, however, is responsible for the "actual planning and provision of such care, supervision or services." Id. Further, ORS 419B.343(1)(a) requires DHS to ensure that its case planning for family reunification "bears a rational relationship" to the findings that brought the child within the court's jurisdiction. In light of the latter requirement, we have interpreted ORS 419B.337(2) as only allowing the juvenile court to order DHS to provide those services that bear a "rational relationship to the jurisdictional findings." State ex rel. Juv. Dept. v. G. L. , 220 Or.App. 216, 222, 185 P.3d 483, rev. den. , 345 Or. 158, 190 P.3d 379 (2008).
Finally, ORS 419B.387 provides,
"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."
In her opening brief on appeal, mother posits the question presented as whether "either ORS 419B.337(2)or ORS 419B.387" authorized the juvenile court to order her to undergo a psychological evaluation. (Emphases added.) She thus appears to suggest that authority under either of those statutes would be sufficient to affirm the order.
*75 Mother does not argue that both statutes must be satisfied and, indeed, proceeds to address only ORS 419B.337(2) and makes no substantive argument about ORS 419B.387. In its answering brief, the state therefore understandably does not even mention *463 ORS 419B.387. Only in her reply brief does mother make a substantive argument about ORS 419B.387 -and it is significantly different than the "either/or" argument in her opening brief. In her reply brief, mother argues for the first time that, even if a rational relationship exists for purposes of ORS 419B.337(2), the juvenile court lacks authority to order a parent to submit to a psychological evaluation unless the court finds that the evaluation is "needed" under ORS 419B.387. Mother contends that this court's analysis in prior cases such as G. L. and B. W. was "incomplete because it fails to grapple with ORS 419B.387" and that, to the extent necessary, those cases should be overruled. Mother also emphasized that position at oral argument.
"We will not consider a ground for reversal that is raised on appeal for the first time in a reply brief." Federal National Mortgage Association v. Goodrich , 275 Or.App. 77, 86, 364 P.3d 696 (2015) ; see also ORAP 5.45(1) (generally requiring a matter claimed as error to be "preserved in the lower court and * * * assigned as error in the opening brief"). We therefore do not consider mother's argument regarding ORS 419B.387 -and her position that our prior decisions fail to account for that statute-as a basis for reversal. Rather, we limit our analysis to the issue presented in mother's opening brief: whether the psychological evaluation ordered by the juvenile court bears a "rational relationship" to the jurisdictional bases for purposes of ORS 419B.337(2).
We have addressed what constitutes a "rational relationship" on several occasions and have observed that it is a low threshold. The provision of psychological services to parents is not limited to cases in which a parent's mental health condition is a basis for jurisdiction. G. L. , 220 Or.App. at 223, 185 P.3d 483. "Rather, it requires only a rational connection between the service to be provided and the basis for jurisdiction." Id. For example, in G. L. , DHS requested a psychological evaluation of the mother because she had repeatedly reunited with the *76 father, who had a history of domestic violence, despite her recognition that he was "dangerous" and her repeated vows to end the relationship. Id. at 220, 223, 185 P.3d 483. The juvenile court found that an evaluation would be "helpful just trying to figure out" how the mother could do a better job protecting the children. Id. at 220, 185 P.3d 483. The court ordered the evaluation, and we affirmed. Because jurisdiction was "based, in part, on mother's unwillingness or inability to protect her children and her failure to benefit from past services designed to assist her in doing so," a psychological evaluation "to assess mother's service needs" was rationally related to the jurisdictional bases and would enable DHS to develop an appropriate case plan. Id. at 223-24, 185 P.3d 483. The court therefore "did not exceed its authority under ORS 419B.337(2) by ordering [the] mother to participate in a psychological evaluation." Id. at 224, 185 P.3d 483.
In B.W. , the bases for jurisdiction were that the father did not have a parental relationship with the child and was unavailable to parent due to incarceration. 249 Or.App. at 125, 275 P.3d 989. The juvenile court ordered the father to undergo a psychological evaluation "to determine whether [he was] going to be safe around the child." Id. at 128, 275 P.3d 989. It noted that the father was incarcerated for two offenses involving violence (assault and riot) and reasoned that his lack of a relationship with the child and unavailability to parent was due to that incarceration. There was evidence that the evaluation would aid DHS to develop an appropriate case plan "to address the safety risk presented by father's circumstances," and the juvenile court explained that it was "only reasonable" for DHS to want information about the father's mental health before allowing "unsupervised visits or anything like that." Id. at 126, 275 P.3d 989. We affirmed. Describing the rational relationship requirement applicable to ORS 419B.337(2) as a "minimal threshold of justification," we concluded that the foregoing was sufficient to establish a rational relationship. B. W. , 249 Or.App. at 128, 275 P.3d 989. Moreover, "another, equally valid, reason" for the evaluation was that the father had never met the child and had no relationship with her, so he would "benefit from services to help him establish a relationship with her," and the psychological evaluation *464 would "help DHS decide what services are best suited to that need." Id. *77 In State v. R. H. , 237 Or.App. 245, 249, 239 P.3d 505, rev. den. , 349 Or. 480, 246 P.3d 745 (2010), the father had abandoned the child and lacked a relationship with the child. There was conflicting evidence as to whether he had sexually abused the child 10 years earlier. Id. at 247-48, 254, 239 P.3d 505. The juvenile court ordered the father to complete a psychosexual evaluation to determine whether he posed a risk to the child. Id. at 254, 239 P.3d 505. We affirmed, applying the rational relationship standard from ORS 419B.343(1)(a) : "Because it is unclear whether sexual abuse did occur and it is clear that [the child] is confused about what happened, the evaluation is a rational way to see if father does, in fact, pose a risk and, if so, what treatment is necessary." R. H. , 237 Or.App. at 254-55, 239 P.3d 505.
The foregoing decisions illustrate the "minimal threshold of justification," B. W. , 249 Or.App. at 128, necessary to order a psychological evaluation of a parent under the "rational relationship" standard applicable to ORS 419B.337(2).[2] If evidence in the record rationally leads the juvenile court to believe that a parent's mental health might be contributing to an established jurisdictional basis, it is permissible for the court to order an evaluation of the parent to determine whether a mental health issue in fact exists.[3] If the evaluation reveals a mental health issue, that information will assist DHS in developing a case plan and offering appropriate services to the parent. If it does not, DHS will know that is not a factor in the case. Put another way, if there is reason to believe (based on the evidence) that a *78 parent might not be able to ameliorate an existing basis for jurisdiction without mental health services, then ordering a psychological evaluation is rationally related to the jurisdictional bases.
The low threshold for a rational relationship is met here. The juvenile court could rationally conclude from the evidence in this record that something more than drug addiction might be at play with respect to mother's substantial neglect of D and slow engagement in services, specifically a possible mental health issue that might prevent mother from successfully ameliorating the jurisdictional bases unless identified and addressed. The police reports from May 2017 contain no indication that substance abuse was involved in those incidents. Exposure to domestic violence, the condition of mother's home (an officer noted broken glass and garbage on the floor in May 2017), D's fear of mother hurting him and his fear of being alone with mother, mother's slow engagement in services, and mother's failure to appear for visits with D also are not inexorably linked to her drug use. It is possible that mother's methamphetamine use is the sole underlying cause of everything that led the court to assert jurisdiction over D. That is not the only possibility, however, and the court was not required to accept mother's assertion that drug use is the sole explanation for her conduct. It is rational in these circumstances to order a psychological evaluation of mother.
It is true that ordering a psychological evaluation could be viewed as speculative in the sense that it is unknown whether mother actually has a mental health issue. However, it is no more speculative to order an evaluation in this case than it was in G. L. , *465 where it was unknown whether a mental health condition contributed to the mother's conduct, in B. W. , where it was unknown why the father had engaged in violent crimes, and in R. H. , where it was unknown whether the father posed a risk to the child. ORS 419B.337(2) does not set a high bar for what services DHS can be ordered to provide. See B. W. , 249 Or.App. at 128, 275 P.3d 989 ("minimal threshold of justification"). We also reject mother's argument that, to establish a rational relationship, a DHS witness needed to testify specifically that a psychological evaluation would *79 be helpful to DHS for case planning. A case worker's summary assertion that an evaluation would be helpful to DHS is not enough in and of itself to establish a rational relationship, nor is such a statement necessary when other evidence establishes a rational relationship.
In sum, the record adequately establishes a rational relationship, for purposes of ORS 419B.337(2), between ordering a psychological evaluation of mother and the jurisdictional bases relating to neglect. Under the circumstances, it was rational for the juvenile court to order an evaluation to obtain information about mother's mental health.
Affirmed.

The exact nature of a psychological evaluation is not discussed in the record, but D's attorney described it as "much more all-encompassing than a mental health assessment." As far as the "risk" mentioned by the court, the results of a psychological evaluation may be used against the parent in the dependency proceedings. E.g. , Dept. of Human Services v. T. M. D. , 292 Or.App. 119, 132-34, 139, 423 P.3d 88, rev. allowed , 363 Or. 677, 427 P.3d 1087 (2018) (terminating parental rights based in part on results of psychological evaluation).

G. L. , B. W. , and R. H. were each decided based on the "rational relationship" standard set out in ORS 419B.343(1)(a) and applicable to ORS 419B.337(2) per G. L. In none of those cases did the parents argue that ORS 419B.387 required a different standard. Having now been alerted to that possible issue-albeit in a manner that causes us not to resolve it in this case-we note that, on its face, ORS 419B.337(2) addresses only which services a juvenile court may order DHS to "provide." Neither we nor the Supreme Court have ever directly addressed whether the pertinent statutes distinguish the juvenile court's authority to order DHS to "provide" a psychological evaluation from its authority to order a parent to submit to one.

Conversely, if there is no rational basis to suspect a mental health issue, the court may not order a psychological evaluation. Cf. Dept. of Human Services v. L. G. , 250 Or.App. 290, 291, 280 P.3d 396 (2012) (juvenile court erred in ordering the father to submit to random drug testing where there was no rational relationship between that order and the factual basis on which jurisdiction was found).