AOYAGI, J.
*545 This is a dependency case involving a young boy, K. The juvenile court originally asserted jurisdiction over K based on several admissions by mother (including drug use) and an admission by father that father has significant medical issues that interfere with his ability to parent. The court later added as an additional jurisdictional basis that father lacks sufficient and stable housing for the child. In a permanency judgment, the court ordered father to undergo a psychological evaluation. Father appeals that judgment, arguing that the evaluation bears no rational relationship to the jurisdictional bases. For the reasons that follow, we reverse and remand.
We review the juvenile court's legal conclusions for errors of law and its findings for any evidence. Dept. of Human Services v. B. W. , 249 Or. App. 123, 125, 275 P.3d 989 (2012).
K was born in 2015. In March 2017, the juvenile court asserted jurisdiction over K based on admissions by mother and father. Because mother is not a party to this appeal, we limit our discussion to the jurisdictional bases pertaining to father. The original basis for jurisdiction was that father has "significant medical issues that interfere with his ability to parent and needs assistance from the court and state to ensure the welfare of the child." In March 2018, the court added as an additional basis for jurisdiction that "father currently lacks sufficient and stable housing for the child."[1]
On April 24, 2018-more than a year after it first asserted jurisdiction over K-the juvenile court held a permanency hearing at which Stan, a DHS caseworker, *546 testified about the "barriers" to K returning home to father at that point. Stan's written report also was admitted into evidence.
Stan began her testimony about father by saying that there had been "some concerns about [father's] medical needs in the beginning" but that DHS had "kind of got past that when his doctor signed a release stating that he's only being seen for diabetes, hypertension *821 , and chronic back pain." Father had recently provided the release letter at DHS's request. Still, Stan testified, there were "some concerns back to the medical stuff" because, "at least six months" before the hearing, father had told Stan that he needed a double hip replacement and a kidney transplant, which did not appear to be true. Father also had posted on Facebook that he had renal cancer, which did not appear to be true. When Stan spoke with father about the Facebook post, father told her that "he can post what he wants and he doesn't care" and that "he's going to continue to post what he wants; it's freedom of speech." Asked whether father mispresenting the need for a hip replacement was a barrier to reunification, Stan answered that it was "not a barrier" to reunification but was "about truth in his medical since we have that allegation." It was an issue of having "accurate information about [father's] medical condition."
Stan next addressed father's housing, which she identified as the main barrier to reunification: "But it's mainly housing, and we've dealt with the housing now for probably six to eight months." At the time of the hearing, father was living with his mother in a senior living community that does not allow children. Father, who lacks financial resources, was waiting for a decision on his social security application. In the weeks before the hearing, father had followed through on most or all of DHS's housing recommendations, including getting on "the housing list" (which had a four-year wait) and interviewing for Oxford House housing. Stan did not dispute that father had done so but indicated a belief that father should have acted sooner on DHS's recommendations. Father needed "to obtain safe appropriate housing for himself and his child" before DHS would return K to father's care. In response to questioning by DHS's attorney, *547 Stan agreed that a psychological evaluation of father "might be helpful to identifying what the barrier is with relation to housing" because "there could be some unidentified barrier that a psychological evaluation might reveal about how best to approach this with Father in such a way that he can fully engage with pursuing housing."
At the end of the permanency hearing, the juvenile court ruled that it was going to continue jurisdiction over K. It then asked whether DHS was requesting a psychological evaluation, and DHS answered affirmatively. Father objected that "there's nothing even close to a rational relationship between [the jurisdictional bases] and a psychological evaluation." Father argued that he had been trying to get housing, had a plan to get housing, and was not at fault for not yet having housing. The court asked K's attorney for K's position. K's attorney conceded that a psychological evaluation was not rationally related to the jurisdictional basis regarding housing but suggested that father's "psychological and emotional wellbeing" could be viewed as a "medical" issue.
The juvenile court ordered father to undergo a psychological evaluation, stating:
"In my reviewing of the case law regarding psychological evaluations, * * * it doesn't require a kind of a specific mental health allegation. It simply needs to have some rational relationship. And frankly, you know, Father does have a right to say whatever he wants to about his medical condition, but if he's talking about medical conditions that would affect his ability to care for a child, then he shouldn't be upset when other people make decisions based on what he's saying.
"And so, it also causes me * * * some concern about what's going on. What * * * is that a reflection of? And as far as his functioning, if he feels like he needs to tell people that he has these medical conditions if he does not have them.
"And so, I am going to * * * order a psychological evaluation for Dad."
On appeal from the permanency judgment, which incorporates that order, father contends that there is no rational relationship between a psychological evaluation and the *548 jurisdictional bases.[2] The state disagrees *822 and argues that there is a rational relationship to both jurisdictional bases.
We recently discussed the origin of the "rational relationship" requirement and our existing case law applying that requirement to orders of psychological evaluations of parents in dependency cases in Dept. of Human Services v. A. F. , 295 Or. App. 69, 78-79, 433 P.3d 459 (2018). In short, when the juvenile court asserts jurisdiction over a child and places the child in the legal custody of DHS-as occurred here-the court may "specify the particular type of care, supervision or services" that DHS is to provide both to the child and to the child's parents or guardians. ORS 419B.337(2). Because ORS 419B.343(1)(a) requires DHS to ensure that its case planning for family reunification "bears a rational relationship" to the findings that brought the child within the court's jurisdiction, we have interpreted ORS 419B.337(2) as granting the juvenile court authority to order DHS to provide a service only if the service bears a "rational relationship to the jurisdictional findings." State ex rel Juv. Dept. v. G. L. , 220 Or. App. 216, 222, 185 P.3d 483, rev. den. , 345 Or. 158, 190 P.3d 379 (2008).
We have applied the rational-relationship standard in several published opinions over the past decade, including, most notably, G. L. , 220 Or. App. 216, 185 P.3d 483 ; B. W. , 249 Or. App. 123, 275 P.3d 989 ; and State v. R. H. , 237 Or. App. 245, 239 P.3d 505, rev. den. , 349 Or. 480, 246 P.3d 745 (2010). Those decisions "illustrate the 'minimal threshold of justification,' B.W. , 249 Or. App. at 128, 275 P.3d 989, necessary to order a psychological evaluation of a parent under the 'rational relationship' standard applicable to ORS 419B.337(2)." A. F. , 295 Or. App. at 77, 433 P.3d 459. "If evidence in the record rationally leads the juvenile court to believe that a parent's mental health might be contributing to an established jurisdictional basis, it is permissible for the court to order an evaluation of the parent to determine whether a mental health issue in fact exists." Id.
*549 Thus, the bar is low to establish a rational relationship between a psychological evaluation of a parent and a jurisdictional basis. Also, certainty about the existence of a mental health issue is unnecessary; indeed, an evaluation is typically desired precisely because DHS is uncertain whether a parent has a mental health issue that is contributing to one of the jurisdictional bases. At the same time, the rational-relationship standard does have substance. For example, in Dept. of Human Services v. L. G. , 250 Or. App. 290, 291, 280 P.3d 396 (2012), we reversed an order that the father submit to random drug testing because there was no rational relationship to the factual basis on which jurisdiction was found.
In this case, we conclude that the juvenile court's order of a psychological evaluation of father does not rationally relate to the jurisdictional bases. DHS requested an evaluation-and offered evidence about the relevance of an evaluation-only in connection with the second jurisdictional basis, which related to father's housing situation. However, given the court's ruling and the parties' arguments on appeal, we will first address the original jurisdictional basis, i.e. , that father had "significant medical issues that interfere with his ability to parent and needs assistance from the court and state to ensure the welfare of the child."
With respect to the original jurisdictional basis, we begin with an observation about its scope. The parties have not identified what father's "significant medical issues" were when the juvenile court took jurisdiction in March 2017, but we understand the jurisdictional basis to refer to physical health issues, and DHS does not argue otherwise on appeal. It is apparent from Stan's testimony that DHS (which filed the jurisdictional petition) understood "medical issues" to mean physical health issues and that the recent letter from father's doctor, regarding father's current physical health, effectively resolved the original jurisdictional basis from DHS's perspective.[3] DHS does not appear to have *823 *550 provided father with any mental health services between March 2017 and April 2018, as it presumably would have if mental health issues were part of the jurisdictional basis. Most importantly, the juvenile court's ruling indicates that the court itself did not view father's mental health as part of the established original jurisdictional basis. Rather, the court understood the issue to be whether a psychological evaluation nonetheless had "some rational relationship" to the jurisdictional basis. We therefore understand the original jurisdictional basis to refer only to physical health conditions.[4]
With that in mind, we turn to the merits. As described in its ruling, the juvenile court ordered a psychological evaluation of father because father was "talking about medical conditions that would affect his ability to care for a child" and because it had "some concern" as to why father would feel a need "to tell people that he has these medical conditions if he does not have them." However, the only relevant evidence at the hearing was that father did not currently have any medical conditions that would interfere with his ability to care for K, that DHS did not view the misrepresentation of a medical condition itself as a barrier to reunification, and that any misrepresentations were relevant only insofar as they highlighted the need for "accurate information about [father's] medical condition." Accurate information about father's physical health is not something that a psychological evaluation would provide. Rather, it is the subject of evidence such as the letter from father's doctor. In other words, the court was correct that it is relevant *551 whether father has renal cancer , because that is a significant medical issue that might affect his ability to care for K. If father does not have renal cancer, however, then knowing why father said at one point that he did might provide some insight into father's psyche but would not help DHS formulate services to resolve the actual jurisdictional basis.
In the course of a dependency proceeding, it might come to the court's attention that a parent has engaged in puzzling or questionable behavior-such as feigning medical conditions-but not every aspect of a parent's behavior needs explanation. Whether a mental health issue is contributing to particular conduct by a parent is relevant only if the conduct itself pertains to a jurisdictional basis. For example, in G. L. , 220 Or. App. at 223, 185 P.3d 483, the mother's repeated reunification with the father, despite his history of domestic violence and her vows to end the relationship, went directly to the jurisdictional bases, which included the mother's failure to protect the children, and was preventing reunification. In A. F. , 295 Or. App. at 78, 433 P.3d 459, the mother's substantial neglect of the child was the source of two jurisdictional bases and, coupled with her lack of engagement in services, was preventing reunification. By contrast, there is no evidence here that father's misrepresentation of medical conditions to Stan or on Facebook is contributing to the jurisdictional basis or is a barrier to reunification. A psychological evaluation therefore is not rationally related to the original jurisdictional basis.
That brings us to the second jurisdictional basis, which is that "father currently *824 lacks sufficient and stable housing for the child." Although the juvenile court does not appear to have relied on that jurisdictional basis in ordering the psychological evaluation, both parties treat it as a possible basis for the court's ruling, so we address it.
The court did not identify a rational relationship between a psychological evaluation of father and father's lack of suitable housing for K, and we are unpersuaded by DHS's attempts to do so. DHS has not identified any evidence that reasonably suggests that a mental health issue might be contributing to father's housing situation. Stan's conclusory testimony agreeing that a psychological evaluation "might *552 be helpful" in identifying some "unidentified barrier" that was keeping father from "fully engag[ing] with pursuing housing" is insufficient, at least absent some other evidence. Moreover, the juvenile court added father's housing situation as a jurisdictional basis less than eight weeks prior to the hearing, and DHS did not dispute that father was actively pursuing suitable housing for K by the time of the hearing, including following DHS's recommendations. Even if a psychological evaluation were to reveal a mental health issue that might have contributed to father's slow start on that process, it is undisputed that father is now engaged in finding housing, and there is no evidence from which it is possible to infer that treatment of a mental health issue could enable father to find suitable housing any faster at this point. Ordering a psychological evaluation therefore is not rationally related to the second jurisdictional basis.
Accordingly, we conclude that the juvenile court erred in ordering a psychological evaluation of father. The evaluation is not rationally related, for purposes of ORS 419B.337(2), to either of the bases on which the court took jurisdiction of K.
Reversed and remanded.

The jurisdictional basis regarding father's housing is reflected in a judgment in a related case, Marion County Circuit Court Case No. 18JU01138. Father has provided copies of court documents from that case in an appendix to his opening brief. The parties and the juvenile court treated the two jurisdictional bases as equally at issue for purposes of deciding whether to order a psychological evaluation of father, so we do the same and take judicial notice of the court documents provided by father. See Dept. of Human Services v. S. A. B. O. , 291 Or. App. 88, 91, 417 P.3d 555 (2018) (taking judicial notice of petitions and judgments in related dependency case); OEC 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

In his reply brief, father argues for the first time that the juvenile court failed to consider ORS 419B.387 in ordering the psychological evaluation. See ORS 419B.387 (requiring a finding that "treatment or training" is "needed" by a parent for specific purposes before the court "may order the parent to participate in the treatment or training"). That issue was not preserved in the juvenile court or raised in the opening brief, so we do not address it. See ORAP 5.45(1).

We note that father's apparent misrepresentations about medical conditions occurred long after jurisdiction was taken. There is no evidence, and DHS does not argue, that father did not have significant physical health issues in March 2017, when jurisdiction was taken. The only evidence related to misrepresentations about medical conditions for which a time frame was provided was dated to about six months before the permanency hearing, which would have been about seven months after the court took jurisdiction. Despite Stan's testimony that the letter from father's doctor had largely resolved the original jurisdictional basis from DHS's perspective, neither father nor DHS moved to dismiss that jurisdictional basis at the April 2018 permanency hearing, and its ongoing propriety is not before us in this appeal.

We express no opinion on whether "medical issues" could be construed to include mental health conditions in other circumstances. See Dept. of Human Services v. D. D. , 238 Or. App. 134, 139, 141, 241 P.3d 1177 (2010), rev. den. , 349 Or. 602, 249 P.3d 123 (2011) (when a parent makes factual admissions in support of jurisdiction, waives DHS proving the jurisdictional allegations, and then seeks to challenge the taking of jurisdiction, "we consider only whether, pursuant to the allegations, DHS would have been allowed to offer evidence that would establish juvenile court jurisdiction," and we liberally construe the parent's admission with a view of substantial justice to the parties).