Argued and submitted March 8, affirmed June 16, petition for review allowed
August 2, 2021 (368 Or 510)
See later issue Oregon Reports

In the Matter of A. B. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. J. M.,
*Appellant.*

Malheur County Circuit Court
20JU00943; A174486 (Control)

In the Matter of Z. K. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. J. M.,
*Appellant.*

Malheur County Circuit Court
20JU00944; A174487

In the Matter of O. R. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. J. M.,
*Appellant.*

Malheur County Circuit Court
20JU00945; A174488

In the Matter of K. J. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. J. M.,
*Appellant.*

Malheur County Circuit Court
20JU00946; A174489

In the Matter of F. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. J. M.,
*Appellant.*

Malheur County Circuit Court
20JU00947; A174490

493 P3d 59

Father in these dependency cases appeals jurisdictional and dispositional judgments of the juvenile court taking jurisdiction of father's five children under ORS 419B.100(1)(c) and directing father to participate in services, including a psychological evaluation. Father contends that the court erred in its jurisdictional and dispositional determinations and lacked authority to require him to submit to a psychological evaluation. *Held*: Writing to address only father's challenge to the juvenile court's order that he submit to a psychological evaluation, the Court of Appeals concluded that the record and the juvenile court's findings and explanation aligned with the Court of Appeals' case law for what must be shown under ORS 419B.387 to authorize a compelled psychological evaluation.

Affirmed.

Lung S. Hung, Judge.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

Aoyagi, J., concurring in part and dissenting in part.

**ARMSTRONG, P. J.**

Father in these dependency cases appeals jurisdictional and dispositional judgments of the juvenile court taking jurisdiction of father's five children under ORS 419B.100(1)(c) (juvenile court has exclusive jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child]"), and directing father to participate in services, including a psychological evaluation.[1] We affirm the jurisdictional and dispositional determinations without discussion and write only to address father's challenge to the court's requirement that he submit to a psychological evaluation.

The family has had extensive involvement with the Department of Human Services (DHS) at least since 2016, arising out of reports of neglect and abuse of the children as a result of mother's mental health issues, housing instability, and both parents' drug use. The children were first made wards of the court in January 2017, based on mother's mental health and her violence toward father. Father retained physical custody of the children pursuant to a safety plan to protect them from mother. But father did not comply with the safety plan, and the parents continued to have contact, despite a court order prohibiting them from doing so.

After the court assumed jurisdiction, father filed a petition for dissolution of the parents' marriage in March 2017, and the petition alleged that mother's mental health problems prevented her from being able to parent the children. In September 2017, while the dissolution matter was pending, DHS dismissed the dependency petition. Then, in November 2017, pursuant to the parents' motion, the court dismissed the dissolution petition.

Throughout 2018, the parents' relationship was tumultuous, and DHS had multiple contacts with the family, but the children remained in parents' care. In June 2019, the oldest child reported that mother was neglecting the children due to her mental health issues and that father was not protecting the children from mother. DHS initiated

---

[1] The juvenile court entered identical judgments in all of the children's cases. Mother has stipulated to the court's jurisdiction and is not a party to the appeal.

an assessment and attempted to work with father on an in-home safety plan, but father was unwilling to do that. DHS recommended that the children be removed, but the court declined to issue a removal order at that time, and the assessment was closed.

In January 2020, the children were alone with mother when she threatened herself with a knife in front of the children. The oldest child called father at work, and he returned. The police removed mother from the house, and DHS initiated an assessment, again attempting to work with father to implement an in-home safety plan to protect the children from mother.

Father was on probation on a conviction for misdemeanor telephonic harassment of mother. He failed to report to his probation officer, and, on February 7, 2020, father's probation officer determined, after father submitted to a urine test, that father had used methamphetamine, in violation of his probation. Father served a sanction of six days in jail for that violation, and DHS took custody of the children and filed the instant petitions. The children were placed in foster care in February 2020.

On his release from jail, father began drug treatment but continued to use methamphetamine and marijuana. He met weekly with a mental health counselor but continued to downplay mother's risk to the children and to deny use of methamphetamine. When his DHS case worker challenged him to stop lying and to be honest with her, he answered, "I don't know how. I don't know how to do that. This is just how *** I was raised and I don't know how to fix it." DHS identified an in-patient drug treatment program for father, but he declined to participate.

In June and July 2020, the juvenile court held jurisdictional and dispositional hearings and heard testimony from DHS witnesses describing the family's long involvement with DHS, father's failure to abide by plans to keep the children safe from mother, and father's drug use. Father had been receiving drug treatment since his release from custody but continued to use methamphetamine up to the time of trial. Father acknowledged that he could not be a safe

parent while high on methamphetamine but testified that he would leave the family home to take methamphetamine and leave the children with a babysitter or in mother's care.

Father testified that he believed that mother could safely parent the children when her mental condition was stable and he is not home, and that he is able to recognize when she is unable to parent and to protect the children. The family's caseworker testified that father had a pattern of leaving the children with mother.[2] DHS presented evidence that the children have severe emotional issues as a result of father's failure to parent and to protect them from mother.

The court found that father has continued to use drugs and associate with known drug users. It found that father's drug addiction continues to be a condition that harms the children. The court found that father has not kept the children safe from mother:

> "The evidence also demonstrates a repeating cycle where Father continues to separate and get back together with Mother, and when they are together, Father leaves the children with Mother or allows Mother to be with the children. With or without Father present, Mother's presence—with or without Father present, Mother's presence has a substantial negative effect on the children. *** Given the historical repeating cycle and there being reason to question the father's credibility, the court does not find Father will protect his children from Mother."

The court found the children to be within the court's jurisdiction based on allegations that: (1) father "knew that mother's mental health prevented her from safely parenting the [children] and he continued to leave the [children] in [mother's] care"; (2) "father's substance abuse interferes with his ability to safely parent the [children]"; and (3) "father has displayed a pattern of behavior over several years where he leaves the [children] in the care of the mother knowing that she cannot safely parent the [children]."

---

[2] The caseworker testified that, during a telephone conversation with mother shortly before the last day of the trial, she heard father speaking angrily to mother in the background. DHS presented evidence that father reported the caseworker's call to the police as domestic abuse.

The court then held a dispositional hearing to determine placement for the children and services. DHS requested that the court order father to participate in parental training and in-home services to create a safety plan, and submit to a psychological evaluation, a mental health evaluation, and a substance abuse evaluation. Father objected to the mental health and psychological evaluations, contending that they were not warranted by the allegations of the petition or the evidence or relevant to the other services to be provided to father.

DHS contended that the psychological evaluation was necessary so that father could be successful in his reunification plan and drug treatment, in which he had been engaged without success for six months:

> "Keep in mind it's been six months since these children entered care and Father still is struggling in completing alcohol and drug treatment, engaging in that. And so DHS is requesting that psychological evaluation looking really at the past six months, looking at those services that have been offered and seeing a lack of progress there, as well as the evidence presented at the jurisdictional trial that demonstrates that Father does have mental health issues, does have psychological impairment that needs to be addressed in order for him to be successful not only in a reunification plan, but his alcohol and drug treatment."

DHS then called as a witness the caseworker's supervisor to provide testimony in support of DHS's request for a psychological evaluation. The witness explained that DHS sought a psychological evaluation to understand why, in the previous six months, father had failed to progress in either his drug treatment or his ability to protect the children from mother:

> "We've had I believe it's 13 reports regarding this family since 2014. Multiple of those reports were concerning Mom's mental health, domestic violence, substance use, the instability in the household, [father's] physical abuse of the children. And what we're seeing is a pattern of behavior that has played out over years of violence in the home, drug use, and instability. [Father] when contacted previously had agreed to work with the agency in a prior case and he struggled to maintain implementing the safety plan that he had agreed upon in the home. And then most recently

has admitted to not being honest with the Court and with the agency regarding statements that he's made. So it's hard to trust that [father] at this point would be able to continue to work with the agency in a forthcoming manner based on his behavior. He hasn't been willing *** to work with the agency and that has not allowed the agency to fully understand his behaviors. Based on the pattern of his behaviors it may appear, based on my experience, that his substance use has affected his mental health. But at this point, we're *** unsure about what his underlying mental health concerns may be and a psychological evaluation would help us guide case planning, reunification, and fully understand what his needs are."

In addressing the disposition, the juvenile court incorporated its findings on jurisdiction. The court declined to order father to submit to a mental health evaluation, explaining that there was no diagnosed mental health condition that would support such an evaluation. But the court ordered father to take parenting classes and to submit to substance abuse and psychological evaluations. The court's stated reasoning for requiring the psychological evaluation focused on father's long-term failure to protect the children from mother:

"There was ample testimony regarding the father's repeated attempts to separate himself or keep the children safe from the mother and repeated failures to do so, both by prior DHS cases, prior divorce filings, prior other things that were done either by Father on his own or through with the assistance or urging of DHS that (indiscernible) simply failed to bring that forward at least until now. And I think a psychological evaluation would be helpful in determining the rationally related (indiscernible) determine what—what else needs to be done, what can be done to assure that Father can keep the children safe and away from their mother. So I do find that a psychological evaluation is rationally related and based on both the evidence presented at adjudication and disposition."

Father contends on appeal that the evidence is not sufficient to support the court's requirement that he participate in a psychological evaluation. Father has not requested *de novo* review, and this is not an exceptional case warranting such review. *See* ORS 19.415(3)(b) (giving court discretion to

review *de novo*); ORAP 5.40(8)(c) (court exercises discretion to review *de novo* "only in exceptional cases"). The issue that we write to address on appeal presents the legal question whether the juvenile court's determination complies with statutory requirements and this court's case law delineating the circumstances under which a parent may be required to undergo a psychological evaluation. *Dept. of Human Services v. D. R. D.*, 298 Or App 788, 791, 450 P3d 1022 (2019) (juvenile court's statutory authority to order a parent to submit to a psychological evaluation is a question of law).

ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

In *D. R. D.*, we had before us the question of what must be shown under ORS 419B.387 to enable a juvenile court to order a parent to participate in a psychological evaluation. *Id.* at 790-91. The facts in that case are somewhat similar to those here. In *D. R. D.*, in July 2018, the juvenile court had ordered the father to participate in substance abuse treatment and had directed that, if he continued to use drugs for 60 days or more, he would be required to submit to a psychological evaluation to determine whether psychological issues were contributing to his addiction. *Id.* at 792. At a review hearing in October 2018, there was evidence that the father had not engaged in any services that had been offered to him, and the court found that the father was not able to stay clean and sober. *Id.* at 795. The family's caseworker testified that the father's participation in a psychological evaluation would "give some insight as to why he is not engaging in substance abuse treatment so that we could get him the proper services, so that he can engage in treatment and remain clean and sober to be a parental resource for this child." *Id.* at 793. The juvenile court ordered that the father submit to a psychological evaluation because a "psychological evaluation will help DHS determine what it can do to motivate father to engage and what services are best

to help father maintain sobriety and develop a relationship with the child." *Id.* at 796.

On the father's appeal, we rejected DHS's argument that ORS 419B.387 authorizes the juvenile court to order a parent's compliance with a psychological evaluation to determine if treatment or training is needed. We said that ORS 419B.387 "does not imbue the juvenile court with authority to order a parent to comply with a discovery mechanism to determine if there is a need for treatment or training." *Id.* at 800. Rather, we held, the establishment of a need for treatment or training at an evidentiary hearing gives rise to the court's authority to order a parent to comply with that treatment or training.

We concluded in *D. R. D.* that a psychological evaluation is authorized under ORS 419B.387 if needed "as a component of treatment or training." *Id.* at 799. We further held that the evidence in that case was sufficient to support the juvenile court's finding that, in light of the father's inability to be clean and sober after 60 days, a psychological evaluation was needed as a component of the substance abuse treatment to "help DHS determine what it can do to motivate father to engage *** and develop a relationship with the child." *Id.* at 800. We held, in essence, that the evidence supported the juvenile court's determination that a psychological evaluation was a needed component of the ordered treatment and training under ORS 419B.387, because it would provide DHS with information to help gain the father's compliance with the required services. *Id.*

There is another statutory provision that we have held can authorize a court to order a parent to submit to a psychological evaluation. ORS 419B.337(2) provides, in part:

> "The court may specify the particular type of care, supervision or services to be provided by the Department of Human Services to wards placed in the department's custody and to the parents or guardians of the wards[.]"

In *State ex rel Juv. Dept. v. G. L.*, 220 Or App 216, 223, 185 P3d 483, *rev den*, 345 Or 158 (2008), we held that, as a feature of directing DHS to provide services, ORS 419B.337(2) grants a juvenile court the authority to order a parent to

submit to a psychological evaluation to help design needed services, if there is "a rational connection between the service to be provided and the basis for jurisdiction." In view of our holding in *D. R. D.* that the psychological evaluation of the father was authorized by ORS 419B.387, we did not discuss in *D. R. D.* whether the evaluation would also have been authorized under ORS 419B.337(2). 298 Or App at 796 n 3. Subsequent to *D. R. D.*, in *Dept. of Human Services v. L. J. W.*, 302 Or App 126, 132, 460 P3d 540, *rev den*, 367 Or 75 (2020), we rejected an unpreserved challenge to the court's authority to order a psychological evaluation under ORS 419B.387, on the ground that "there are two potentially applicable standards," ORS 419B.337(2) and ORS 419B.387:

> "Both ORS 419B.337(2) and ORS 419B.387 provide authority for a psychological examination. One statute requires that a psychological examination rationally relate to a jurisdictional basis, while the other requires a showing of a need for the examination for treatment or training directed toward reunification."

Here, the juvenile court did not state explicitly whether it was relying on ORS 419B.337(2) or ORS 419B.387. The court's statement that the psychological evaluation was "rationally related" would seem to key into ORS 419B.337(2). But the court also said that the psychological evaluation would be helpful in determining what "needs to be done, what can be done to assure that Father can keep the children safe and away from their mother," which paraphrases the requirement set out in ORS 419B.387 (treatment can be ordered if the court "finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward"). Understood in the context of the record and the juvenile court's other findings, it is evident that the court was not authorizing a psychological evaluation as a tool to discover what types of training or treatment were appropriate, which would not be allowed under *D. R. D.* 298 Or App at 800. Rather, the court concluded that a psychological evaluation would be helpful to father's success in the training and treatment that had been ordered to allow father to resume caring for the children. That is, given the family's long history of involvement with

DHS and father's long-term failure to address the need to protect the children from mother, the court determined that it would be important to know whether psychological factors were in play, so that the ordered training could better address father's deficits and help him to function as a parent and resume care of the children.

We appreciate the dissent's frustration with the lack of clarity in the statutes and the case law concerning the court's authority to require a parent to submit to a psychological evaluation. But, as we observed in *L. J. W.*, there are two potentially applicable standards, one of which is ORS 419B.387. Here, although the trial court did not state specifically on which statute it relied, it provided a rationale that satisfies ORS 419B.387. We conclude that the record and the trial court's findings and explanation align with *D. R. D.* for what must be shown under ORS 419B.387 to authorize a compelled psychological evaluation.[3] Accordingly, we affirm the juvenile court's requirement that father submit to a psychological evaluation.

Affirmed.

**AOYAGI, J.,** concurring in part and dissenting in part.

I agree with the majority that the juvenile court did not err in asserting dependency jurisdiction over the children. I disagree, however, that the juvenile court properly ordered father to submit to a psychological evaluation.

On this record, I understand the juvenile court to have ordered father to submit to a psychological evaluation under authority of ORS 419B.337(2), as construed in *State ex rel Juv. Dept. v. G. L.*, 220 Or App 216, 185 P3d 483, *rev den*, 345 Or 158 (2008).[1] In my view, as a matter of statutory construction, the juvenile court's authority to order a

---

[3] In light of our conclusion that the court's order that father submit to a psychological evaluation was lawful under ORS 419B.387, we need not consider whether it was also lawful under ORS 419B.337.

[1] In ruling, the juvenile court framed the issue as being that "[t]he court needs to find that there is a rational basis between what it orders parents to do and the allegations that were *** found against the father"; addressed the evidence; and then concluded that a "psychological evaluation is rationally related" based on the evidence.

parent to submit to a psychological evaluation derives from ORS 419B.387, not ORS 419B.337(2). More specifically, I read ORS 419B.337(2) as authorizing the juvenile court to order *DHS* to *provide* certain services—which may include ordering DHS to provide a parental psychological evaluation if it is rationally related to the jurisdictional bases—while I read ORS 419B.387 as authorizing the juvenile court to order a *parent* to *participate in treatment or training* when certain findings are made—which may include participating in a psychological evaluation if it is a component of the ordered treatment or training. Thus, were we writing on a clean slate, I would readily say that the juvenile court committed legal error here—applying the wrong statute and standard—and would reverse and remand for the court to reconsider whether to order father to submit to a psychological evaluation under the correct statute and standard.

But we are not writing on a clean slate. To the contrary, at this point, the slate could not be messier.

We first relied on ORS 419B.337(2) as a source of authority for a juvenile court to order a *parent* to submit to a psychological evaluation in *G. L.*, 220 Or App at 222. Despite it being an issue of first impression, we offered no explanation for that conclusion, beyond noting that the "[m]other does not dispute that the text of ORS 419B.337(2) permits the court to specify the particular type of service, such as a psychological evaluation, that DHS must provide to her." *Id.* Our analysis in *G. L.* presumed the authority itself and focused on the legal standard for when that authority could be exercised. *See id.* On that issue, both the mother and DHS argued that ordering a psychological evaluation had to be "rationally related to the jurisdictional findings," and the only dispute was whether that standard was met on the particular facts. *Id.* We agreed that "rationally related" was the correct standard, and we ultimately agreed with the state that the standard was met on the facts. *Id.* at 222-24.

We have cited and relied on *G. L.* intermittently but consistently for the past 13 years, typically with no analysis. *See, e.g.*, *Dept. of Human Services v. L. J. W.*, 302 Or App 126, 130, 460 P3d 540, *rev den*, 367 Or 75 (2020); *Dept. of Human Services v. K. J.*, 295 Or App 544, 548, 435 P3d 819 (2019);

*Dept. of Human Services v. A. E. F.*, 261 Or App 384, 387, 323 P3d 482 (2014); *Dept. of Human Services v. B. W.*, 249 Or App 123, 128, 275 P3d 989 (2012).

In recent years, we have seen more and more challenges to juvenile court orders requiring parents to submit to psychological evaluations, often with confusing records as to whether the court was relying on ORS 419B.337(2), ORS 419B.387, or both. In response, we have studiously avoided revisiting *G. L.*, consistently avoiding ORS 419B.337(2) arguments on procedural grounds. This case is only the most recent example. *See* 312 Or App at 311-12.

Meanwhile, we have also struggled with the scope of the juvenile court's authority to order a psychological evaluation under ORS 419B.387. In *Dept. of Human Services v. D. R. D.*, 298 Or App 788, 799, 450 P3d 1022 (2019), we construed ORS 419B.387 as authorizing the court to order a parent to participate in treatment or training found to be needed by the parent after an evidentiary hearing—including ordering the parent to submit to a psychological evaluation "*as a component*" of the needed treatment or training—but emphasized that ORS 419B.387 "does not imbue the juvenile court with authority to order a parent to comply with a discovery mechanism to determine if there is a need for treatment or training." (Emphasis in original.) That seemingly clear principle has proved difficult to apply in practice, largely because we have never explained how one can tell when a psychological evaluation is a "component" of treatment or training—where no service provider has requested one—except to suggest that, at some point, the juvenile court can itself declare it a component if a parent has struggled for long enough in a particular type of treatment or training without success. *See, e.g.*, *Dept. of Human Services v. T. L. H.*, 300 Or App 606, 616, 453 P3d 556 (2019); *D. R. D.*, 298 Or App at 800.

In this particular case, I would tackle father's challenge to the trial court's reliance on ORS 419B.337(2), which is a preserved claim of error, and, were we to decide that *G. L.* is plainly wrong, I would reverse and remand for further proceedings, because I do not believe that we should address ORS 419B.387 in the first instance when it requires

factual findings. I write separately, however, less to express disagreement with the disposition of this particular case and more out of a larger concern about the state of the law in this area. I fear that, until and unless we receive some Supreme Court guidance regarding the proper construction of ORS 419B.337(2) and ORS 419B.387 with respect to parental psychological evaluations in juvenile dependency cases, we will only continue to dig ourselves deeper into a hole. That is unfortunate, because the uncertainty in the law regarding when a parent may properly be ordered to submit to a psychological evaluation is problematic both for litigants and for the juvenile courts.

For those reasons, I respectfully concur in part and dissent in part.