Argued and submitted August 27; on respondent's motion to dismiss filed
July 9, and appellant's response filed July 23, motion to dismiss as moot denied,
affirmed November 20, 2019

In the Matter of A. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. L. H.,
*Appellant.*

Columbia County Circuit Court
17JU03457; A170602

453 P3d 556

In this juvenile dependency case, father appeals from a review hearing judgment, assigning error to the juvenile court's order that he submit to a psychological evaluation. Father contends that, under ORS 419B.387, the court lacked authority to order the evaluation, arguing that an evaluation did not qualify as "treatment or training" and that sufficient proof had not been established in a hearing to require the evaluation. *Held*: In light of *Dept. of Human Services v. D. R. D.*, 298 Or App 788, 791, 450 P3d 1022 (2019), the Court of Appeals concludes that ORS 419B.387 authorizes a psychological evaluation when the evidence indicates that the parent may require it as a component of additional treatment or training needed to "prepare the parent to resume the care" of a child because of the child's particular needs. In an evidentiary hearing, the Department of Human Services established that father needed a psychological evaluation as a component of such treatment or training to resume care.

Motion to dismiss as moot denied; affirmed.

Cathleen B. Callahan, Judge.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

DeVORE, J.

Motion to dismiss as moot denied; affirmed.

**DeVORE, J.**

In this juvenile dependency case, father appeals from a review hearing judgment, assigning error to the juvenile court's order that he submit to a psychological evaluation. Father argues that, under ORS 419B.387, the court lacked authority or evidence to order the evaluation, as related to "treatment or training." In light of our recent decision, *Dept. of Human Services v. D. R. D.*, 298 Or App 788, 450 P3d 1022 (2019), we conclude that ORS 419B.387 authorizes a psychological evaluation when the evidence indicates that the parent may require it as a component of additional treatment or training needed to "prepare the parent to resume the care" of a child because of the child's particular needs.[1] Because Department of Human Services (DHS) established in an evidentiary hearing that father needed a psychological evaluation as a component of such treatment or training to resume care, we affirm.

"We review the juvenile court's legal conclusions for errors of law and its findings for any evidence." *Id.* at 791 (quoting *Dept. of Human Services v. A. F.*, 295 Or App 69, 71, 433 P3d 459 (2018)). Father's child became a ward of the court after removal from his mother in April 2017, when he was two years old. The jurisdictional judgment, as to father, asserted dependency jurisdiction over the child due to (1) father having done nothing to assert custody of his child despite his awareness of the allegations against mother, and (2) his residential instability which interfered with his ability to provide for his child. The child was placed in foster care, and the case plan was to reunify the child with his parents. As part of the disposition, father was ordered to: (a) participate in a drug and alcohol assessment and follow all related recommendations; (b) engage in a psychological evaluation 60 days after sobriety and follow all related recommendations; and (c) complete a parenting course.

Over the following year-and-a-half, father struggled with drug addiction and homelessness. However, he participated in services and, ultimately, secured housing. Meanwhile, the child—who was diagnosed with adjustment

---

[1] *D. R. D.* was decided after briefing in this case.

disorder with anxiety, attention deficit/hyperactivity disorder, speech sound disorder, and child neglect—was receiving speech and occupational therapy, as well as mental health counseling. Child also suffered from asthma so severe that, on one occasion, it led to hospitalization.

Despite progress towards reunification, DHS had concerns regarding father's ability to provide appropriate care for his child. The child began therapeutic visits at father's residence, supervised by a counselor, who subsequently recommended overnight visits. Father was also invited to participate in his son's therapy appointments, but missed about half. When he did attend, he appeared "scattered," and he came in and out during the therapy time. That, as well as reports of father's continued substance abuse, and diluted and missed urinalysis (UA) tests, raised red flags for DHS.

In November 2018, DHS filed a motion requesting that the juvenile court order father to submit to a psychological evaluation. DHS noted the child's several diagnoses and argued that the evaluation was necessary because "the child has high behavioral needs, and the evaluation will assess the father's ability to maintain a stable residence while trying to parent a child whose needs are as high as this child's needs." DHS highlighted that father had only recently started engaging in services addressing "his ability to maintain a stable and safe residence for the child" and that he had done so without "parenting the child full time." DHS also noted father's past insobriety. DHS concluded that it needed "to ensure that [father] has all services that he needs in order to parent his son for an extended period of time." DHS emphasized that it was "imperative for the child to have a stable caretaker in order for his high behavioral needs to be met."

In support of that motion, DHS submitted the caseworker's affidavit. In that affidavit, the caseworker agreed that the psychological evaluation was "necessary to determine whether the father will be able to meet the high needs of the child and, if so, what services may be necessary to help him meet the child's high needs." There were multiple exhibits attached to the affidavit demonstrating the child's high

needs: a neuropsychological report from a children's hospital regarding services necessary to meet the child's needs; a psychological report from the Children's Program stating, in part, that the child requires a caregiver with higher than average parenting skills; and a Child and Adolescent Needs and Strengths (CANS) assessment identifying additional needs for the child. The caseworker noted that those reports were consistent with those that DHS and the Court Appointed Special Advocate had provided to the juvenile court.

The caseworker also attached a drug and alcohol assessment of father from nine months earlier, in which an evaluator had noted the following: father had experienced childhood abuse; he had post-traumatic stress disorder (PTSD); he needed treatment for his use of methamphetamine, which he may be using to "self-medicate and address long-standing issues"; and he was "difficult to track and immature for his age." The caseworker included a recent treatment update showing father was doing well in drug and alcohol treatment but suffered from PTSD. She concluded that DHS needed a complete and accurate evaluation of father to "ensure that [his] treatment gains are sustainable after his child is placed in his home given the child's high needs."

The juvenile court held a hearing on the state's motion for a psychological evaluation in February 2019. At that time, the caseworker testified to issues the child faces on a daily basis: speech problems, trauma responses, heightened anxiety, food hoarding, and difficulty sleeping. To address those issues, she reported that he received occupational and speech therapy and mental health counseling.

The caseworker testified that she had concerns about father's ability to be "proactive" and "planful" with respect to ensuring his son's treatment. She was unsure that the child would make it to his appointments consistently. The caseworker said that she had received information bringing her to question father's ability to understand and participate in his child's treatment appointments. Namely, when father did attend appointments, he was "either not in the appointment with [his child] the entire time or not fully

engaged or coming in and out of the appointments, things like that," and he "appeared scattered." She said that, without a proper psychological evaluation, she would be unable to assess father's ability to process specialized information.

The caseworker testified that she supported a psychological evaluation for the following reasons:

"I think from the agency's perspective, this child is extremely high needs and would be a lot for any parent to handle.

"He has needs that I personally see, not that other kids in care have not exhibited, that are pretty rare and that we've had even a hard time finding specialists who know how to handle these issues.

"And so just knowing that, I would want the psychological evaluation to be able to tell the agency if [father] is able to understand and meet those needs that are rare and ever present in his daily life."

The caseworker further noted father's diluted and a missed UA tests, and agreed that those, "in combination with the community reports of snorting pills and doing knife hits," raised "concern regarding the strength of [father's] recovery." She said that even those UAs which were "clean" and negative for illicit drugs showed that father continued using marijuana. The caseworker was concerned that smoke related to father's marijuana and tobacco use could endanger the health of the child who was asthmatic and had a recent related hospitalization.

Father presented evidence in opposition to the psychological evaluation. He called witnesses to testify to his progress towards reunifying with his son, including his having secured housing, the supervised residential visits with his child, the recommendation by the counselor that DHS allow overnight visits, and his completion of drug and alcohol treatment and a parent mentorship program. Father also tried to explain his challenges in attending appointments, showing that he had no driver's license or vehicle, and that he was struggling to obtain consistent transportation, relying on public transportation and the assistance of others. Some evidence was presented that undermined

father's case. The record showed that father was still looking for housing quite recently and, the same month as the hearing, he was struggling to pay rent and his landlord had called him "irresponsible." It also contained an email from the counselor indicating that, although she recommended overnight visits, father "needs to work on making appointments and scheduling." Testimony was elicited from the caseworker, who noted limitations to the counselor's knowledge regarding father's UA tests and his psychological background and needs. The caseworker expressed that she had reservations regarding father's graduation from drug and alcohol treatment in light of his continued substance use. She also said that father failed to pick up free bus passes for public transportation set aside for him.

At the conclusion of the hearing, the juvenile court granted DHS's motion and ordered father to submit to a psychological evaluation. The court found that "it is in the child's best interest that [father] participate in a psychological evaluation." The court told father, "Bottom line is a high-risk kid needs more than 50 percent of your time for doctor appointments. So, you have come a long way, but you got started late." In April 2019, father completed the psychological evaluation.

Father now appeals the juvenile court's order, arguing the psychological evaluation does not qualify as treatment or training necessary to effectuate family reunification, as authorized under ORS 419B.387. DHS moves for dismissal of the appeal, arguing that, in light of father submitting to the psychological evaluation, his appeal is moot. With respect to the merits, DHS responds that the juvenile court's authority to order treatment or training necessarily encompasses assessments to determine the type and extent of treatment or training needed in a particular case; the court must have the ability to order such assessments and evaluations in order to exercise its authority under ORS 419B.387.

We address the mootness issue first. As the party moving for dismissal, DHS has the burden of proving mootness, including that "the decision being challenged on appeal will have no further practical effect on the rights of

the parties." *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018). To meet that burden, DHS "need not imagine all potential collateral consequences that could result and prove their nonexistence." *Id.* Rather, father must first "identify any continuing practical effects or collateral consequences that, in [his] view, render the appeal justiciable." *Id.* DHS then bears the responsibility of demonstrating that those effects or consequences are either legally insufficient or factually incorrect. *Id.* DHS must persuade the reviewing court that dismissal is warranted, for the appeal to be deemed moot. *Id.* at 426-27.

Here, DHS's motion to dismiss is predicated on the fact that father has already submitted to the contested psychological evaluation. Father counters that the appeal could nevertheless have a practical effect on his rights. Specifically, he contends that a decision by this court in his favor regarding the lawfulness of the order would provide a basis by which he could seek to limit or prevent the introduction of the evaluation as evidence in the ongoing dependency proceeding or during a future proceeding to terminate parental rights. Father explains, a forensic report based on such an evaluation "can be the most damning evidence against a parent in dependency and termination-of-parental-rights proceedings." DHS provides no response to father's argument regarding the collateral consequences of this appeal. Ultimately, we are not persuaded that dismissal is warranted, and we conclude that the appeal is not moot.

The merits of father's appeal turn on ORS 419B.387. That statute provides, in relevant part:

> "If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

ORS 419B.387. Under that provision, the juvenile court's authority to order "treatment or training" includes the power to order a psychological evaluation as a component of that treatment or training. *D. R. D.*, 298 Or App at 799. The statute, however, does not authorize "the juvenile court to

order a parent's compliance with a psychological evaluation to determine if treatment or training is needed in the first instance." *Id.* Rather, "it is the establishment of a need for treatment or training at the evidentiary hearing that then creates the court's authority to order a parent to comply with that treatment or training." *Id.* at 799-800.

In *D. R. D.*, we considered whether ORS 419B.387 authorized the juvenile court to order a psychological evaluation when it was a component of treatment needed by the parent to correct the circumstances that resulted in wardship—that is, to address the basis for its jurisdiction. 298 Or App 788. In that case, we concluded in the affirmative. *Id.* at 799. The juvenile court asserted dependency jurisdiction over the father's infant on the basis that the father's substance abuse interfered with his ability to safely parent and placed the infant at risk of harm. *Id.* at 791. In its jurisdictional judgment, the court ordered the father to complete a substance abuse assessment and comply with its recommendations, to submit to various alcohol and drug tests, and, if he continued to use, to complete a psychological evaluation "to determine if there are psychological issues contributing to his drug addiction." *Id.* at 791-92.

The father filed a motion seeking a review hearing. *Id.* at 792. At that hearing, the father admitted to recent drug use, and a DHS caseworker testified that he had not engaged in the substance abuse treatment. *Id.* at 793-95. A DHS caseworker said that a psychological evaluation would "give some insight as to why" and allow DHS to "get him proper services so he can engage in treatment and remain clean and sober to be a parental resource for this child." *Id.* at 793. The court found that the father had continued abusing drugs and that the evaluation would "help DHS determine what it can do to motivate father to engage and what services are best to help father maintain sobriety and develop a relationship with the child." *Id.* at 796. It ordered the father to submit to the evaluation, and he appealed that decision. *Id.*

We determined that the juvenile court acted within its authority under ORS 419B.387 in ordering the father to submit to the psychological evaluation. *Id.* at 800. We noted

that the juvenile court held an evidentiary hearing on the matter and that DHS presented evidence on the father's drug use and his need for an evaluation. *Id.* The court made factual findings that the father was unable to stay sober and that the evaluation would help DHS determine how to help him engage in treatment. *Id.* We concluded that the court did not err in ordering the evaluation because, on that record, it was clear that "the juvenile court found that DHS had presented evidence to establish a need for substance abuse treatment and that the psychological evaluation was a component of that needed treatment." *Id.*

In this case, we conclude that the juvenile court did not exceed its authority under ORS 419B.387 in ordering father to submit to a psychological evaluation. The record contains evidence to support the conclusion that the evaluation was a component of additional treatment or training that father needed to resume care of his child. The court based that decision on factual findings supported by evidence presented at an evidentiary hearing.

That evidence showed that father's child had extraordinarily high needs and addressing those needs and resuming care would require exceptional parental skills. DHS introduced multiple assessments establishing the child's notable neuropsychological issues, including adjustment disorder with anxiety, attention deficit/hyperactivity disorder, speech sound disorder, and child neglect. It presented evidence that, on a daily basis, the child struggled with speech problems, trauma responses, heightened anxiety, food hoarding, and difficulty sleeping. Assessments also showed that the child would need services to address his high behavioral needs, like speech and occupational therapy and mental health counseling. The child also suffered from asthma severe enough to lead to hospitalization. The caseworker testified that the child's issues and needs were "pretty rare" and even specialists were having difficulty "know[ing] how to handle these issues." An assessment concluded that, "the child requires a caregiver with higher than average parenting skills."

Given the child's high needs, the court permissibly determined that treatment or training was needed to

prepare father to resume care of the child, especially in view of the evidence of father's impediments to parenting. As described above, there was evidence that, at the time of the hearing, father continued to struggle to maintain residential stability, had difficulty consistently attending and participating effectively in his son's appointments, and was suffering from PTSD. There was evidence that a psychological evaluation was necessary to get a fuller picture of father's circumstances in order to determine how to prepare father to meet his child's needs. The caseworker testified that the evaluation would help assess father's ability to plan, be proactive, understand specialized information, and meet his child's needs "that are rare and ever present in [the child's] daily life." She said that it would be "necessary to determine whether the father will be able to meet the high needs of the child and, if so, what services may be necessary to help him meet the child's high needs."

The juvenile court, noting the particular needs and demands of a "high-risk kid," and alluding to father's delayed engagement in services, ordered father to submit to the psychological evaluation because it was in "the child's best interest." The court did not err in ordering the evaluation because this record contains evidence to establish a need for treatment or training to meet the needs, and resume the care, of the child and that the psychological evaluation was a component of that needed treatment or training.

Father asserts that the psychological evaluation cannot be a part of treatment or training because it was forensic in nature, not therapeutic, lacking confidentiality and intended as evidence against him in a judicial proceeding. However, we rejected that very argument in *D. R. D.*, 298 Or App at 799, concluding,

> "It is the determination of a need for treatment or training, following an evidentiary hearing establishing such need, that is the legislatively imposed limitation of the juvenile court's authority, not the potentially incriminating nature of such treatment or training."

In sum, the juvenile court did not exceed its authority in ordering father to submit to a psychological evaluation. Under ORS 419B.387, the court may order a psychological

evaluation when the evidence indicates that the parent may require it as a component of additional treatment or training needed to prepare the parent to resume the care of the child because of the child's particular needs. This record satisfied that standard.

Motion to dismiss as moot denied; affirmed.